IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

-FILED-

MAR 0 2 2017

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

MICHAEL P. MISCH, BRADLEY P. COLBORN, and the law )
firm of ANDERSON, AGOSTINO & KELLER, P.C. on behalf of )
the UNITED STATES OF AMERICA, )
and the STATE OF INDIANA, )
                                       )
        Plaintiff/Relators, )
                                        )
v.                                           )   CASE NO. 3:16CV587
                                        )
MEMORIAL HOSPITAL OF SOUTH BEND, INC.; SAINT )  **FILED UNDER SEAL**
JOSEPH REGIONAL MEDICAL CENTER, INC.; SAINT )
JOSEPH REGIONAL MEDICAL CENTER – PLYMOUTH )
CAMPUS, INC.; ST. VINCENT HOSPITAL AND HEALTH )
CARE CENTER, INC.; CIOX HEALTH, LLC; HUNTINGTON )
MEMORIAL HOSPITAL, INC.; ST. JOSEPH HEALTH )
SYSTEM, LLC; TERRE HAUTE REGIONAL HOSPITAL, LP; )
COLUMBUS REGIONAL HOSPITAL; RHN CLARK )
MEMORIAL HOSPITAL, LLC; INDIANA UNIVERSITY )
HEALTH, INC.; WARSAW HEALTH SYSTEM, LLC; MAJOR )
HOSPITAL; LUTHERAN MUSCULOSKELETAL CENTER, )
LLC; WHITLEY MEMORIAL HOSPITAL, INC.; INDIANA )
UNIVERSITY HEALTH BLOOMINGTON, INC.; PORTER )
HOSPITAL, LLC; GOOD SAMARITAN HOSPITAL; INDIANA )
UNIVERSITY HEALTH BALL MEMORIAL HOSPITAL, INC.; )
PARKVIEW WABASH HOSPITAL, INC.; WOODLAWN )
HOSPITAL, INC.; UNION HOSPITAL, INC.; IOM HEALTH )
SYSTEM, LP; FRANCISCAN ALLIANCE, INC.; PULASKI )
MEMORIAL HOSPITAL; DEARBORN COUNTY HOSPITAL; )
INDIANA UNIVERSITY HEALTH ARNETT, INC.; JOHNSON )
MEMORIAL HOSPITAL; HENRY COUNTY MEMORIAL )
HOSPITAL; PARKVIEW HOSPITAL, INC.; BLUFFTON )
HEALTH SYSTEM, LLC; CAMERON MEMORIAL )
HOSPITAL, INC.; COMMUNITY HOSPITAL OF NOBLE )
COUNTY, INC.; HANCOCK REGIONAL HOSPITAL; THE )
METHODIST HOSPITALS, INC.; ELKHART GENERAL )
HOSPITAL, INC.; RUSH MEMORIAL HOSPITAL; BAPTIST )
HEALTHCARE SYSTEM, INC.; FAYETTE MEMORIAL )
HOSPITAL ASSOCIATION, INC.; DUPONT HOSPITAL, LLC; )
INDIANA UNIVERSITY HEALTH BEDFORD, INC.; )
MARGARET MARY COMMUNITY HOSPITAL, INC.; ST. )
MARY MEDICAL CENTER, INC.; THE HEALTH AND )
HOSPITAL CORPORATION OF MARION COUNTY; )

1

COMMUNITY HOSPITAL OF BREMEN, INC.;                         )
ORTHOPAEDIC HOSPITAL AT PARKVIEW NORTH, LLC;               )
INDIANAPOLIS OSTEOPATHIC HOSPITAL, INC.; ST.               )
VINCENT CARMEL HOSPITAL, INC.; ST. VINCENT                 )
ANDERSON REGIONAL HOSPITAL, INC.; COMMUNITY                )
HOSPITAL OF LAGRANGE COUNTY, INC.;  ADAMS                  )
COUNTY MEMORIAL HOSPITAL; ST. CATHERINE                    )
HOSPITAL, INC.; JACKSON COUNTY SCHNECK                     )
MEMORIAL HOSPITAL; PERRY COUNTY MEMORIAL                   )
HOSPITAL; INDIANA UNIVERSITY HEALTH WHITE                  )
MEMORIAL HOSPITAL, INC.; MARION GENERAL                    )
HOSPITAL, INC.; DAVIESS COUNTY HOSPITAL; INDIANA           )
UNIVERSITY HEALTH STARKE HOSPITAL, LLC;                    )
COMMUNITY HOWARD REGIONAL HEALTH, INC.;                    )
DEKALB MEMORIAL HOSPITAL, INC.; PUTNAM COUNTY              )
HOSPITAL; INDIANA UNIVERSITY HEALTH PAOLI, INC.;           )
and DECATUR COUNTY MEMORIAL HOSPITAL,                      )
                                                           )
        Defendants.                                        )

## FIRST AMENDED COMPLAINT FOR DAMAGES

### I. Introduction

1. The United States of America, by and through its qui tam relators, Michael P. Misch, Bradley P. Colborn, and the law firm of Anderson, Agostino & Keller, P.C., bring this action under 31 U.S.C. §§ 3729-32 (the "False Claims Act") to recover from the defendants for all damages, penalties, and other remedies available to the United States of America for violations of the False Claims Act, as well as the State of Indiana for similar state level claims.

2. The Plaintiff/Relators also seek to recover for all damages, penalties, and remedies available to the United States of America and State of Indiana for violations of law under 42 U.S.C. §§ 1320a-7a and 1320a-7b (the "Anti-Kickback Statute") to recover from the defendants for all damages, penalties, and other remedies available to the United States of America for violations of the Anti-Kickback Statute. While qui tam relator actions were not originally allowed under the Anti-Kickback Statute, claims for violations of it may now be brought as *per se* violations of the False Claims Act under 42 U.S.C. § 1320a-7b(g).

2

## II. Jurisdiction and Venue

3. This Honorable Court has jurisdiction over this case under 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331(Federal Question).

4. Under 31 U.S.C. § 3732(a), the Northern District of Indiana is the proper venue for this case because it is the judicial district in which the events and omissions that gave rise to the Plaintiff's claims occurred, as well as the judicial district where several of the defendant hospitals are located.

5. Many states have their own derivative versions of statutes applicable to cases involving false claims and kickbacks. Seeking false claims or kickbacks in relation to the Indiana Medicaid program is illegal pursuant to Ind. Code § 5-11-5.7-1 *et seq.* and Ind. Code § 12-15-24-1 *et seq.* The Federal statutes at issue in this case explicitly provide courts with jurisdiction to hear related state law claims based upon the same transaction or occurrence pursuant to 31 U.S.C. § 3732(b).

## III. Parties

6. Relators Michael P. Misch and Bradley P. Colborn are individuals and attorneys residing within Indiana, bringing this case on behalf of and as part of their work for the law firm of Anderson, Agostino & Keller, P.C., a domestic professional corporation incorporated under the laws of the State of Indiana.

7. Defendant Memorial Hospital of South Bend, Inc., is an Indiana corporation operating a hospital commonly known as "Memorial Hospital" located at 615 N. Michigan Street, South Bend, Indiana 46601. The Center for Medicare and Medicaid Services has assigned a unique ten (10) digit National Provider Identifier ("NPI number") of 1295772093. Its Registered Agent for service of process is Mr. Kreg Gruber, 615 N. Michigan Street, South Bend, Indiana 46601.

8. Defendant Saint Joseph Regional Medical Center, Inc. is an Indiana nonprofit corporation operating a hospital commonly known as the "St. Joseph Mishawaka Medical

3

Center" located at 5214 Holy Cross Parkway, Mishawaka, Indiana 46545. This facility's NPI number is 1841245594. This Defendant owns and is related to another Defendant, Saint Joseph Regional Medical Center – Plymouth Campus, Inc., a related but separate nonprofit corporation operating a hospital commonly known as the "St. Joseph Plymouth Medical Center" located at 1915 Lake Avenue, Plymouth, Indiana 46563. This facility's NPI number is 1174571129. The Registered Agent for service of process for both of these corporate Defendants is CT Corporation System, 150 W. Market Street, Indianapolis, Indiana 46204.

9. Defendant St. Vincent Hospital and Health Care Center, Inc., is an Indiana corporation operating a hospital commonly known as "St. Vincent Indianapolis Hospital" located at 2001 W. 86th Street, Indianapolis, Indiana 46260. This facility's NPI number is 1306898960. Its Registered Agent for service of process is Mr. Stephan C. Masoncup, 10330 N. Meridian Street,, Ste. 401, Indianapolis, Indiana 46290.

10. Defendant CIOX Health, LLC, is a Georgia corporation that contracts to provide medical records for hospitals, formerly known as HealthPort Technologies, LLC, with a principal place of business located at 925 North Point Parkway, Suite 350, Alpharetta, Georgia 30005.

11. Defendant Huntington Memorial Hospital, Inc., is a corporation operating a hospital at 2001 Stutts Road, Huntington, Indiana 46750. This facility's NPI number is 1003821729. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

12. Defendant St. Joseph Health System, LLC, is a corporation operating a hospital at 700 Broadway, Fort Wayne, Indiana 46802. This facility's NPI number is 1023060472. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio St., Suite 500, Indianapolis, Indiana 46204.

13. Defendant Terre Haute Regional Hospital, L.P. is a limited partnership operating a hospital at 3901 S. 7th Street, Terre Haute, Indiana 47802. This facility's NPI number is 1073550133. Its Registered Agent for service of process is CT Corporation System, 150 West Market St., Suite 800, Indianapolis, Indiana 46204.

14. Defendant Columbus Regional Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 2400 East 17th St., Columbus, Indiana 47201. This facility's NPI number is 1104998624.

15. Defendant RHN Clark Memorial Hospital, LLC, is a limited liability company operating a hospital at 1220 Missouri Ave., Jeffersonville, Indiana 47130. This facility's NPI number is 1134186315. Its Registered Agent for service of process is CT Corporation System, 150 West Market St., Suite 800, Indianapolis, Indiana 46204.

16. Defendant Indiana University Health Inc. is a corporation operating a hospital at 1701 N. Senate Ave., Indianapolis, Indiana 46202. This facility's NPI number is 1144266024. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 West 10th St., Suite 6100, Indianapolis, Indiana 46202.

17. Defendant Warsaw Health System, LLC, is a limited liability company operating a hospital at 2101 Dubois Dr., Warsaw, Indiana 46580. This facility's NPI number is 1164475711. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio St., Suite 500, Indianapolis, Indiana 46204.

18. Defendant Major Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 150 W. Washington St., Shelbyville, Indiana 46176. This facility's NPI number is 1174555692.

19. Defendant Lutheran Musculoskeletal Center, LLC, is a limited liability company operating a hospital at 7952 W. Jefferson Blvd., Fort Wayne, Indiana 46804. This facility's NPI

number is 1174706576. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio St., Suite 500, Indianapolis, Indiana 46204.

20. Defendant Whitley Memorial Hospital, Inc., is a corporation operating a hospital at 1260 E. State Road 205, Columbia City, Indiana 46725. This facility's NPI number is 1205844495. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Dr., Fort Wayne, Indiana 46895.

21. Defendant Indiana University Health Bloomington, Inc., is a corporation operating a hospital at 601 W. 2nd St., Bloomington, Indiana 47403. This facility's NPI number is 1205860335. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th St., Suite 6100, Indianapolis, Indiana 46202.

22. Defendant Porter Hospital, LLC, is a limited liability company operating a hospital at 85 E. U.S. Highway 6, Valparaiso, Indiana 46383. This facility's NPI number is 1215151154. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio St., Suite 500, Indianapolis, Indiana 46204.

23. Defendant Good Samaritan Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 520 S. 7th St., Vincennes, Indiana 47591. This facility's NPI number is 1225032881.

24. Defendant Indiana University Health Ball Memorial Hospital, Inc., is a corporation operating a hospital at 2401 W. University Ave., Muncie, Indiana 47303. This facility's NPI number is 1225195340. Its Registered Agent for service of process is Ms. Michelle Altobella, 2401 West University Ave., Muncie, Indiana 47303.

25. Defendant Parkview Wabash Hospital, Inc., is a corporation operating a hospital at 710 N. East Street, Wabash, Indiana 46992. This facility's NPI number is 1245259878. Its

Registered Agent for service of process is Mr. David D. Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

26. Defendant Woodlawn Hospital, Inc., is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1400 E. 9th Street, Rochester, Indiana 46975. This facility's NPI number is 1265413405.

27. Defendant Union Hospital, Inc., is a corporation operating a hospital at 801 S. Main Street, Clinton, Indiana 47842. This facility's NPI number is 1306844519. Its Registered Agent for service of process is Mr. B. Curtis Wilkinson, 333 Ohio Street, Terre Haute, Indiana 47807.

28. Union Hospital, Inc. operates a second and separate hospital facility located at 1606 N. 7th Street, Terre Haute, Indiana 47804. This facility's NPI number is 1619975331. Its Registered Agent for service of process is Mr. B. Curtis Wilkinson, 333 Ohio Street, Terre Haute, Indiana 47807.

29. Defendant IOM Health System, LP, is a limited partnership operating a hospital at 7950 W. Jefferson Blvd., Fort Wayne, Indiana 46804. This facility's NPI number is 1306897335. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

30. Defendant Franciscan Alliance, Inc., is a corporation operating a hospital commonly known as "Franciscan St. Margaret Hammond" at 5454 Hohman Ave., Hammond, Indiana 46320. This facility's NPI number is 1306921911. Its Registered Agent for service of process is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

31. Defendant Franciscan Alliance, Inc. operates a second hospital facility commonly known as "Franciscan St. Anthony Crown Point" at 1201 S. Main Street, Crown Point, Indiana 46307. This facility's NPI number is 1336205798. Its Registered Agent for service of process is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

32. Defendant Franciscan Alliance, Inc. operates a third hospital facility commonly known as "Franciscan St. Francis Indianapolis" at 8111 S. Emerson Avenue, Indianapolis, Indiana 46237. This facility's NPI number is 1386749893. Its Registered Agent for service of process is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

33. Defendant Franciscan Alliance, Inc. operates a fourth hospital facility commonly known as "Franciscan St. Elizabeth Lafayette" at 1501 Hartford Street, Lafayette, Indiana 47904. This facility's NPI number is 1538253521. Its Registered Agent for service of process is Franciscan Alliance, Inc., 1515 W. Dragoon Trail, Mishawaka, Indiana 46544.

34. Defendant Franciscan Alliance, Inc. operates a fifth hospital facility commonly known as "Franciscan St. Elizabeth Crawfordsville" at 1710 Lafayette Road, Crawfordsville, Indiana 47933. This facility's NPI number is 1588774558. Its Registered Agent for service of process is Franciscan Alliance, Inc., 1515 W. Dragoon Trial, Mishawaka, Indiana 46544.

35. Defendant Franciscan Alliance, Inc. operates a sixth hospital facility commonly known as "Franciscan St. Francis Mooresville" at 1201 Hadley Road, Mooresville, Indiana 46158. This facility's NPI number is 1679678197. Its Registered Agent for service of process is Mr. Kevin D. Leahy, 1515 W. Dragoon Trail, Mishawaka, Indiana 46544.

36. Defendant Franciscan Alliance, Inc. operates a seventh hospital facility commonly known as "Franciscan St. Anthony Michigan City" at 301 W. Homer Street, Michigan City, Indiana 46362. This facility's NPI number is 1710051941. Its Registered Agent for service of process is Mr. Kevin D.Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

37. Defendant Franciscan Alliance, Inc. operates an eighth hospital facility commonly known as "Franciscan St. Margaret Dyer" located 24 Joliet St., Dyer, Indiana 46311. This facility's NPI number is 1811077431. Its Registered Agent for service of process is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

38. Defendant Pulaski Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 616 E. 13th Street, Winamac, Indiana 46996. This facility's NPI number is 1306928213.

39. Defendant Dearborn County Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 600 Wilson Creek Road, Lawrenceburg, Indiana 47025. This facility's NPI number is 1326142498.

40. Defendant Indiana University Health Arnett, Inc., is a corporation operating a hospital at 5165 McCarty Lane, Lafayette, Indiana 47905. This facility's NPI number is 1326296211. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Sixth Floor, Indianapolis, Indiana 46202.

41. Defendant Johnson Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1125 W. Jefferson Street, Franklin, Indiana 46131. This facility's NPI number is 1346248986.

42. Defendant Henry County Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1000 N. 16th Street, New Castle, Indiana 47362. This facility's NPI number is 1356428429.

43. Defendant Parkview Hospital, Inc., is a corporation operating a hospital at 11109 Parkview Plaza Drive, Fort Wayne, Indiana 46845. This facility's NPI number is 1366407603. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

44. Defendant Bluffton Health System, LLC, is a limited liability company operating a hospital at 303 S. Main Street, Bluffton, Indiana 46714. This facility's NPI number is 1376594366. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

45. Defendant Cameron Memorial Community Hospital, Inc., is a corporation operating a hospital at 416 E. Maumee Street, Angola, Indiana 46703. This facility's NPI number is 1386683316. Its Registered Agent for service of process is Mr. Douglas Bomba, 416 E. Maumee Street, Angola, Indiana 46703.

46. Defendant Community Hospital of Noble County, Inc., is a corporation operating a hospital at 401 N. Sawyer Road, Kendallville, Indiana 46755. This facility's NPI number is 1457366189. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

47. Defendant Hancock Regional Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 801 N. State Street, Greenfield, Indiana 46140. This facility's NPI number is 1467485003.

48. Defendant The Methodist Hospitals, Inc., is a corporation operating a hospital at 600 Grant Street, Administration Building, Gary, Indiana 46402. This facility's NPI number is 1467504555. Its Registered Agent for service of process is Mr. Raymond Grady, 600 Grant Street, Gary, Indiana 46402.

49. Defendant Elkhart General Hospital, Inc., is a corporation operating a hospital at 600 East Blvd., Elkhart, Indiana 46514. This facility's NPI number is 1477551489. Its Registered Agent for service of process is Mr. Philip A. Newbold, 600 East Blvd., Elkhart, Indiana 46514.

50. Defendant Rush Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1300 N. Main St., Rushville, Indiana 46173. This facility's NPI number is 1497726020.

51. Defendant Baptist Healthcare System, Inc. operates a hospital known as "Floyd Memorial" operating at 1850 State St., New Albany, Indiana 47150.  This facility's NPI number

is 1497798847. Its Registered Agent for service of process is CT Corporation System, 150 W. Market Street, Suite 800, Indianapolis, Indiana 46204.

52. Defendant Fayette Memorial Hospital Association, Inc., is a corporation operating a hospital at 1941 Virginian Avenue, Connersville, Indiana 47331. This facility's NPI number is 1508825720. Its Registered Agent for service of process is Mr. Randall White, 1841 Virginia Avenue, Connersville, Indiana 47331.

53. Defendant Dupont Hospital, LLC, is a corporation operating a hospital at 2520 E. Dupont Road, Fort Wayne, Indiana 46825. This facility's NPI number is 1538110556. Its Registered Agent for service of process is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

54. Defendant Indiana University Health Bedford, Inc., is a corporation operating a hospital at 2900 W. 16th, Bedford, Indiana 47421. This facility's NPI number is 1548260284. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

55. Defendant Margaret Mary Community Hospital, Inc., is a corporation operating a hospital at 321 Mitchell Avenue, Batesville, Indiana 47006.  This facility's NPI number is 1558368449. Its Registered Agent for service of process is Mr. George Junker, II, 321 Mitchell Avenue, Batesville, Indiana 47006.

56. Defendant St. Mary Medical Center, Inc., is a corporation operating a hospital at 1500 S. Lake Park Avenue, Hobart, Indiana 46342.  This facility's NPI number is 1558463745. Its Registered Agent for service of process is Ms. Janice Ryba, 1500 S. Lake Park Avenue, Hobart, Indiana 46342.

57. Defendant The Health and Hospital Corporation of Marion County, is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana,

operating a hospital at 720 Eskenazi Avenue, Indianapolis, Indiana 46202. This facility's NPI number is 1568407310.

58. Defendant Community Hospital of Bremen, Inc., is a corporation operating a hospital at 1020 High Road, Bremen, Indiana 46506. This facility's NPI number is 1568417004. Its Registered Agent for service of process is Ms. Carol Hochstetler, 121 N. Marshall Street, Bremen, Indiana 46506.

59. Defendant Orthopaedic Hospital at Parkview North, LLC, is a limited liability company operating a hospital at 11130 Parkview Circle Drive, Fort Wayne, Indiana 46845. This facility's NPI number is 1568664613. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

60. Defendant Indianapolis Osteopathic Hospital, Inc., is a corporation operating a hospital at 3630 Guion Road, Indianapolis, Indiana 46222. This facility's NPI number is 1609873124. Its Registered Agent for service of process is Ms. Karen Ann P. Lloyd, 7330 Shadeland Station, Suite 200, Indianapolis, Indiana 46256.

61. Defendant St. Vincent Carmel Hospital, Inc., is a corporation operating a hospital at 13500 N. Meridian Street, Carmel, Indiana 46032. This facility's NPI number is 1639124134. Its Registered Agent for service of process is Mr. Stephan C. Masoncup, 10330 N. Meridian Street, Suite 401, Indianapolis, Indiana 46290.

62. Defendant St. Vincent Anderson Regional Hospital, Inc., is a corporation operating a hospital at 2015 Jackson Street, Anderson, Indiana 46016. This facility's NPI number is 1679578850. Its Registered Agent for service of process is Mr. Stephan C. Masoncup, 10330 N. Meridian Street, Suite 401, Indianapolis, Indiana 46290.

63. Defendant Community Hospital of LaGrange County, Inc., is a corporation operating a hospital at 207 N. Townline Road, LaGrange, Indiana 46761. This facility's NPI number is

1679674956. Its Registered Agent for service of process is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

64. Defendant Adams County Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1100 Mercer Ave., Decature, Indiana 46733.  This facility's NPI number is 1689696148.

65. Defendant St. Catherine Hospital, Inc., is a corporation operating a hospital at 4321 Fir St., East Chicago, Indiana 46312. This facility's NPI number is 1689776882. Its Registered Agent for service of process is Ms. Joann Birdzell, 4321 Fir St., East Chicago, Indiana 46312.

66. Defendant Jackson County Schneck Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 411 W. Tipton Street, Seymour, Indiana 47274. This facility's NPI number is 1699738088.

67. Defendant Perry County Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 8885 ST 237, Tell City, Indiana 47586.  This facility's NPI number is 1699779017.

68. Defendant Indiana University Health White Memorial Hospital, Inc, is a corporation operating a hospital at 720 S. 6th Street, Monticello, Indiana 47960.  This facility's NPI number is 1710983945. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Fairbanks Hall, Suite 6100, Indianapolis, Indiana 46202.

69. Defendant Marion General Hospital, Inc., is a corporation operating a hospital at 441 N. Wabash Avenue, Marion, Indiana 46952.  This facility's NPI number is 1770679201. Its Registered Agent for service of process is Mr. Paul L. Usher, 441 N. Wabash Avenue, Marion, Indiana 46952.

70. Defendant Daviess County Hospital is a corporation operating a hospital at 1314 E. Walnut St., Washington, Indiana 47501.  This facility's NPI number is 1861465999. Its Registered Agent for service of process is Ms. Catherine Keck, 1314 E. Walnut Street, Washington, Indiana 47501.

71. Defendant Indiana University Health Starke Hospital, LLC, is a limited liability company operating a hospital at 102 E. Culver Road, Knox, Indiana 46534. This facility's NPI number is 1902033582. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

72. Defendant Community Howard Regional Health, Inc., is a corporation operating a hospital at 3500 S. Lafountain Street, Kokomo, Indiana 46902. This facility's NPI number is 1902878994. Its Registered Agent for service of process is Mr. Joseph T. Hooper, 3500 S. Lafountain Street, Kokomo, Indiana 46902.

73. Defendant Dekalb Memorial Hospital, Inc., is a corporation operating a hospital at 1316 E. 7th Street, Auburn, Indiana 46706.  This facility's NPI number is 1902897937. Its Registered Agent for service of process is Mr. James P. McCanna, 1320 S. Grandstaff Dr., Auburn, Indiana 46706.

74. Defendant Putnam County Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1542 S. Bloomington Street, Greencastle, Indiana 46135. This facility's NPI number is 1912947490.

75. Defendant Indiana University Health Paoli, Inc., is a corporation operating a hospital at 642 W. Hospital Road, Paoli, Indiana 47454. This facility's NPI number is 1912984451. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

76. Defendant Decatur County Memorial Hospital is an entity operated pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 720 N. Lincoln Street, Greensburg, Indiana 47240. This facility's NPI number is 1952300477.

## IV. General Factual Allegations

### A. The HITECH Act and the EHR Incentive Program

77. On February 17, 2009, the American Recovery and Reinvestment Act of 2009 (ARRA) was enacted into law. ARRA, Pub. L. 111-5, February 17, 2009, 123 Stat. 115 (2009). Under the ARRA, Division B's Title IV amended two titles of the Social Security Act by establishing an incentive payment program through Federal grants that sought to promote the adoption and meaningful use of health information technology (HIT) and qualified electronic health records (EHRs). These provisions under the law, along with Title XIII of Division A of the ARRA, are cited to as the "Health Information Technology for Economic and Clinical Health Act" or the "HITECH Act."

78. The purpose of the HITECH Act was to create an incentive program to be operated by the Department of Health and Human Services, known as the Electronic Health Records Incentive Program ("EHR Program"). This program sought to provide incentives and grant funding to promote the acceleration and adoption of HIT and the use of EHRs by hospitals, doctors, and research organizations. The laws as adopted relating to HIT can be found generally at 42 U.S.C. § 17901 *et seq*.

79. Most relevant for the purposes of this complaint, the HITECH Act also provided certain patient rights and restrictions on provider use, disclosures, and sales of health information. 42 U.S.C. § 17935. This portion of the law commands that providers such as hospitals and their business associates "shall not directly or indirectly receive remuneration" for the sale of electronic health records except in limited situations. 42 U.S.C. § 17935(d). It also

provided that individuals "shall have a right to obtain" electronic health records in an electronic format, and to direct the delivery of such electronic records to other entities or persons. 42 U.S.C. § 17935(e)(1). Lastly, it also mandated that charges by hospitals for the provision of this electronic health record "shall not be greater than the entity's labor costs" in responding to a patient's request. 42 U.S.C. § 17935(e)(2).

80. The EHR Program sought to provide grant funding for hospitals and other medical providers who could show "meaningful use" of HIT and EHR technology. The details of the EHR Program were established through rule making, and following public comment a final rule was published on July 28, 2010, beginning at 75 F.R. 44313. Various standards to be utilized were adopted and held under 42 C.F.R. § 495 *et seq*. To show "meaningful use" of the technology, hospitals needed to prove compliance with various reporting criteria, located generally at 42 C.F.R. § 495.6.

81. The EHR Program was set to launch in three stages, with Stage 1 expected to run from approximately October 1, 2010 through to September 30, 2013. In order to qualify for grant funding under this voluntary program, hospitals were required to report their compliance with the criteria identified at 42 C.F.R. § 495.6. This included fourteen "core criteria" objectives. 42 C.F.R. § 495.6(b). Failing to meet any of those compliance objectives would result in a failure to show "meaningful use" under the EHR Program, making a hospital ineligible to receive any grant funding.

82. Throughout Stage 1 of the EHR Program, hospitals were allowed to show compliance and to receive funding by filing Attestation documentation reporting certain figures, including figures relating to compliance with the "core criteria" requirements established at 42 C.F.R. § 495.6(b).

16

83. Of particular relevance to this Complaint, Core Measure No. 11 had an objective of promptly providing patients with electronic health records upon their request within three (3) business days of receiving such a request from a patient or their agent. 42 C.F.R. § 495.6(f)(11).

84. In order to show compliance and to receive grant funding under the EHR Program, hospitals were required to report through Attestation the number of times such a request was made, and the number of times that the hospital complied with the provision of those electronic records within three (3) business days. If the hospital achieved a 50% success rate or more in relation to this measure, then this qualified for "meaningful use" and made the hospital eligible to receive public funding. A failure to meet this success rate meant that meaningful use had not been met, disqualifying a hospital from receiving any of the grant funding under the program.

85. The Attestation paperwork filled out by hospital administrators or staff to receive this funding contained specific warnings and notices that filing false claims, making misrepresentations, or providing false, incomplete, or misleading information under the Attestation process would subject a person to criminal and civil penalties.

**B. The Relators' Initial Investigation**

86. Defendants Memorial Hospital of South Bend, Inc., Saint Joseph Regional Medical Center, Inc., Saint Joseph Regional Medical Center – Plymouth Campus, Inc., and St. Vincent Hospital and Health Care Center, Inc., (collectively "the Original Hospital Defendants") operate four hospitals within the State of Indiana.

87. The relators to this action consist of two attorneys, Michael P. Misch and Bradley P. Colborn, acting on behalf of the law firm of Anderson, Agostino & Keller, P.C. This law firm and its attorneys regularly handle causes of action for personal injuries and medical malpractice. As a natural requirement of this work, the firm, its attorneys, and its clients make routine

17

requests for medical records from medical providers, including the Original Hospital Defendants, and other providers throughout the state of Indiana.

88. In recent years, the firm and its attorneys have moved towards specifically requesting the provision of electronic medical records, in an electronic format. This process is achieved by having patients sign releases directing hospitals to provide such records to the patient's chosen agent, the law firm and its attorneys, and specifically requesting that the records be provided in an electronic format.

89. As a result of repeated frustrations and delays in obtaining fast, inexpensive access to electronic medical records, Michael P. Misch and Bradley P. Colborn began to research and investigate how to improve their own attempts to assist clients in getting electronic medical records. The original goal of this investigation was merely to streamline and minimize the time, difficulty, and costs utilized in obtaining patient records, as these costs were ultimately passed on to patients.

90. In the course of this investigation, the relators' own experiences in requesting medical records increasingly did not line up with the requirements of Federal laws, rules, and the EHR Program. This led the relators to increasingly track their own experiences with hospitals involved in the EHR Program, and to exhaustively research what the hospitals were required to do in relation to electronic records. This investigation uncovered factual inconsistencies in what the Original Hospital Defendants were reporting, and what the firm's own experiences have shown. If the hospitals were getting grant funding under the EHR Program, then at least fifty percent (50%) of the request from the firm should have three (3) business day turnaround times. This was not seen at all. As such, the relators have good cause to believe that the Original Hospital Defendants are defrauding the American public by falsely recording or reporting their compliance with Core Measure No. 11 of the EHR Program.

91. The relators continued their investigation by obtaining compiled reporting data for Stage 1 EHR Program Core Measures. A cross referencing of publicly available data regarding the figures reported by the Original Hospital Defendants with the internal requests and responses connected with the relators' own experiences confirmed suspicions that the figures reported by the Original Hospital Defendants are false. While the reported data was publicly available and within the possession of the Federal government, the relators are the original source of the information showing that these reported figures are false.

92. Memorial Hospital of South Bend, Inc., reported Core Measure No. 11 figures showing that it reportedly received four (4) requests for electronic medical records in 2012, and four (4) times it provided the electronic medical records within three business days. For 2013, it reported that these figures were sixteen (16) for sixteen (16). Accordingly, the reported figures for 2012 were four for four (4/4) and for 2013 the figures were sixteen for sixteen (16/16).

93. On five occasions between April and December of 2013 alone, the relators issued electronic medical records requests to Memorial Hospital of South Bend, Inc., while acting as an agent for patients. On only one occasion were records received in an electronic format, and not a single time were these records issued within three business days of the request.

94. Saint Joseph Regional Medical Center, Inc., reported that the St. Joseph Mishawaka Medical Center reported Core Measure No. 11 compliance figures of three for three (3/3), four for four (4/4), and one for one (1/1) for the years of 2011, 2012, and 2013 respectively.

95. In April of 2013, the relators issued an electronic medical records request to St. Joseph Mishawaka Medical Center, while acting as an agent for a patient. The records were not provided within three days of the request, and were not provided in an electronic form.

96. Saint Joseph Regional Medical Center, Inc., or its corporate subsidiary Saint Joseph Regional Medical Center – Plymouth Campus, Inc., reported that the St. Joseph Plymouth

Medical Center reported Core Measure No. 11 compliance figures of one for one (1/1), zero for zero (0/0), and zero for zero (0/0) for 2011, 2012, and 2013 respectively.

97. In October of 2013, the relators issued an electronic medical records request to St. Joseph Plymouth Medical Center, while acting as an agent for a patient. The records were not provided within three days of the request, and were not provided in an electronic form.

98. St. Vincent Hospital and Health Care Center, Inc., reported Core Measure No. 11 compliance figures showing that it had never received a single request for electronic medical records.

99. In August of 2013, the relators issued an electronic medical records request to St. Vincent Hospital and Health Care Center, Inc., while acting as an agent for a patient. The records were not received within three days, and were not received in an electronic form.

100. The conduct of the Hospital Defendants constitutes the issuance of false claims for payment of public funding from the Federal government through the Medicare EHR Program, as well as through the State of Indiana through the EHR Program funds distributed to the state through its Medicaid Program.

101. During Stage 1, Memorial Hospital of South Bend, Inc., illegally and fraudulently claimed and received $5,352,369.93 in payments from the Medicare portion of the EHR Program, and $3,053,320.42 through the Medicaid portion. The total amount received from the citizens of the United States under this program was $8,405,690.35 within the three year period for Stage 1.

102. During Stage 1, Saint Joseph Regional Medical Center, Inc., for its St. Joseph Mishawaka Medical Center, illegally and fraudulently claimed and received $6,049,589.05 in payments from the Medicare portion of the EHR Program, and $2,196,361.18 through the

Medicaid portion. The total amount received from the citizens of the United States under this program was $8,245,950.23 within the three year period for Stage 1.

103. During Stage 1, Saint Joseph Regional Medical Center, Inc., or its corporate subsidiary Saint Joseph Regional Medical Center – Plymouth Campus, Inc., for its St. Joseph Plymouth Medical Center, illegally and fraudulently claimed and received $3,032,843.74 in payments from the Medicare portion of the EHR Program, and $896,028.92 through the Medicaid portion. The total amount received from the citizens of the United States under this program was $3,928,872.66 within the three year period for Stage 1.

104. During Stage 1, St. Vincent Hospital and Health Care Center, Inc. illegally and fraudulently claimed and received $4,758,791.02 in payments from the Medicare portion of the EHR Program, and $3,775,193.12 through the Medicaid portion. The total amount received from the citizens of the United States under this program was $8,533,984.14 within the three year period for Stage 1.

105. In sum, the Original Hospital Defendants have illegally and falsely defrauded the United States of America and its citizens for a total amount of $29,114,497.38 in grant funding from the Medicare and Medicaid portions of the EHR Program during Stage 1.

**C. The Release of Information provider profiting from these records**

106. In all of the requests issued by the relators noted in Paragraphs 91 through 100, CIOX Health, LLC, ("CIOX") then known as HealthPort Technologies, LLC, handled the provision and billing for the medical records of the patients.

107. CIOX is the largest Release of Information ("ROI") provider of medical records in the country. This organization specializes in assisting hospitals and healthcare providers with the storage and release of records to patients in compliance with Federal and state laws.

108. Each and every time that CIOX issued medical records, they were not sent or received within three days of the request being issued.

109. Each and every time that CIOX issued billing invoices for the provision of medical records, it was for an amount that exceeded the labor costs of compliance, often seeking hundreds of dollars for the provision of medical records. [1]

110. On the information and belief of the relators, this is part of a pattern or practice by CIOX to directly or indirectly seek remuneration for the illegal over-billing and sale of medical records at the expense of the Original Hospital Defendants' patients.

111. CIOX acted as a business associate for the Original Hospital Defendants for the purposes of compliance with Federally mandated rules relating to the provision and sale of medical records.

112. CIOX participated in the act of providing and/or causing to be provided a series of false claims to the United States of America by the Original Hospital Defendants. As part of this participation, CIOX routinely and repeatedly engaged in a practice, policy, and/or scheme to illegally and fraudulently over-bill patients for the provision of medical records. This behavior and participation in conjunction with the provision of services to the Original Hospital Defendants had the goal and intent of directly and/or indirectly seeking remuneration for the illegal over-charging and illegal sale of medical records for the profit of the Defendants at the expense of patients.

**D. Subsequent investigation of Statistically Correlated Defendants**

---

[1] In comparison, present Health and Human Services guidance on its website has clarified that a $6.50 flat fee for labor is an appropriate measure for using a flat fee, and that providers cannot simply rely upon per page regulations to illegally inflate charges for this information. See a lengthy and detailed FAQ available for providers and professions at the following address: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

113. As the relators have continued to investigate and correlate data relating to this case, they have discovered that there appears to a stark statistical trend that indicates that the exact same type of fraudulent reporting of Core Measure 11 figures is widespread throughout many Indiana hospitals.

114. Listed in paragraphs 11 through 76 of this Amended Complaint are numerous parties operating an additional sixty-five (65) hospitals in the state of Indiana that will be referenced for purposes of brevity as the 'Statistically Correlated Defendants' for the purposes of this Complaint. Each of these hospitals have reported Core Measure 11 compliance data which is highly suggestive of the fact that the *exact* same fraudulent reporting of Core Measure 11 figures that is alleged against the Original Hospital Defendants is taking place at the hospitals operated by the Statistically Correlated Defendants.

115. The difference between the Original Hospital Defendants and the Statistically Correlated Defendants is that the relators simply did not happen to issue electronic records requests to the Statistically Correlated Defendants' hospitals during the applicable periods of compliance reporting time frames.

116. In situations such as this, strong case law supports expansion of the defendants in a manner that is compliant with the requirements of Fed. R.Civ. Proc. Rule 9(b). Suspicion by the relators alone is certainly not enough to satisfy Rule 9(b) by citing to data alone, but an attempt to provide detail which places the data into context within a pleading that allows such suspicions to be plausible. *See Pirelli Armstrong Tire Corp., Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443-47 (7th Cir. 2011). A plaintiff that has limited information in such an instance may be allowed to maintain claims upon information and belief when the facts constituting the fraud are not accessible to the plaintiff, the plaintiff provides the grounds for

23

such suspicions, and provides firsthand information or examples which place the information into context. *Id.*

117. A host of federal cases involving the False Claims Act have supported the application of the rules identified in the preceding paragraph as long as the relators can provide sufficient detail to provide context, specific examples, and a description of the information possessed by the defendants. *See, generally, U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 501 F.3d 493, 504 (6th Cir. 2007); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1170 (10th Cir. 2010); *U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.,* 895 F.Supp.2d 872, 879 (N.D. Ill. 2012); *U.S. ex rel. Garbe v. Kmart Corporation,* 968 F.Supp.2d 978, 984 (S.D. Ill 2013); *U.S. ex rel. Lisitza v. Par Pharmaceutical Companies, Inc.,* Medicare & Medicaid P 304368, 2013 WL 870623 (N.D. Ill. 2013); *U.S. v. Indianapolis Neurosurgical Group, Inc.,* Medicare & Medicaid P 304341, 2013 WL 652538 (S.D. Ind. 2013).

118. The plaintiff/relators have already stated specific examples for false claims attestations in relation to the Original Hospital Defendants, and alleges that the practice of falsely reporting or merely ignoring the reporting requirements of Core Measure 11 are widespread within the state of Indiana's hospital based upon the context of the reported compliance data.

119. Additionally, the plaintiff/relators specifically allege that the information necessary to prove that the Statistically Correlated Defendants are making false claims is within the exclusive knowledge and/or possession of said Statistically Correlated Defendants. *See Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir. 1994); *Corley v. Rosewood Care Center, Inc.,* 142 F.3d 1041, 1051 (7th Cir. 1998).

120. While we know what was attested to, on whose behalf, and when it was attested to, only the Statistically Correlated Defendants are within possession of documentary evidence which would show what individuals certified this information on behalf of the hospitals. They, or

their Release of Information providers, are also the only parties in possession of the documents to show exactly how many times patients actually requested electronic medical records, and how many times the hospital provided such information within three (3) business days. Plaintiff/relators know this because part of the Attestation form paperwork necessarily submitted in order to receive any funding under the EHR Program included an agreement that the provider would keep records "as are necessary to demonstrate that I met all Medicare EHR Incentive Program requirements[.]" [2]

121. It is presently unknown how many of the Statistically Correlated Defendants utilized a Release of Information provider, or may have utilized Ciox. However, such a detail is only important for purposes of additional or derivative claims of liability. Hospitals are allowed to outsource compliance to 'business associates' such as Ciox. 45 C.F.R. § 160.103. Yet providers remain civilly liable for the acts of their business associates, or any of their subcontractors, employees, or agents. 45 C.F.R. § 160.402(c).

**E. Placing the reported compliance data of the Statistically Correlated Defendants into context**

122. Based on their own experiences, the relators commonly issue several, if not dozens, of requests for electronic medical records every week just from their law firm.

123. Even a cursory review of the compliance figures reported by hospitals throughout Indiana shows that in any given year under the program, many hospitals received dozens if not hundreds of requests from patients or their agents for electronic medical records.

---

[2] A copy of the EHR Incentive Program Attestation User Guide For Eligible Hospitals and Critical Access Hospitals is available as of the time of the filing of this Amended Complaint. For ease of reference, a digital copy and the language referenced may be found on p. 47 of a 55 page pdf located at: https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms/Downloads/HospAttestationUserGuide.pdf

124. This compliance data should have been easy to track, as any electronic health records system necessary to qualify for the EHR Program necessarily contained the ability to track this information.

125. There are numerous examples of Core Measure 11 compliance with numerous requests, shown by a sampling of some reported number by hospitals:

a. In 2013, Hendricks County Hospital in Danville, Indiana, reported that they complied forty-three (43) times for forty-three (43) requests (hereinafter represented as 43/43 for a given year).

b. In 2012 and 2013, Indiana University Health Morgan Hospital in Martinsville, Indiana reported compliance figures of 93/93 and 119/121, respectively.

c. In 2012 and 2013, Goshen Hospital in Goshen, Indiana reported compliance figures of 100/100 and 289/290, respectively.

d. In 2013, Community Hospital of Anderson & Madison County in Anderson, Indiana reported compliance figures of 131/131.

126. Similarly, other hospitals throughout the country seem to have had no trouble reporting and tracking even large numbers of requests, shown by the following representative examples:

a. From 2011 through 2013, Naples Community Hospital Inc. in Naples, Florida reported compliance figures of 239/239, 587/587, and 276/276, respectively.

b. From 2011 through 2013, Bon Secours St. Mary's Hospital of Richmond, Inc. located in Richmond, Virginia, reported compliance figures of 73/73, 651/651, and 603/603, respectively.

c. In 2012 and 2013, The New York and Presbyterian Hospital in Midtown Manhattan in New York, New York reported compliance figures of 698/698, and 3,272/3,272, respectively.

d. From 2011 through 2013, West Virginian University Hospitals, Inc., in Morgantown, West Virginia reported compliance figures of 33/37, 206/264, and 212/351, respectively.

e. From 2011 through 2013, Citizens Memorial Hospital District in Bolivar, Missouri reported compliance figures of 135/150, 395/399, and 461/484 respectively.

f. From 2011 through 2013, Carilion Medical Center in Roanoke, Virginia reported compliance figures of 61/61, 362/362, and 472/472.

g. From 2011 through 2013, Mercy Kansas Communities Inc. in Independence, Kansas reported compliance figures of 278/300, 986/1,069, and 1,052/1,119, respectively.

127. This means that many hospitals in Indiana and throughout the country were receiving literally *hundreds* of requests for electronic medical records during the applicable years, and had no trouble tracking and reporting their compliance with the three (3) day turn-around time for such records.

128. When the relators compared their information against the reported compliance data from the Original Hospital Defendants, it became readily noticeable that these hospitals were only reporting zeroes, single digits, or other smaller numbers. As the relators knew these reported numbers for the Original Hospital Defendants were false, they began to suspect that perhaps there was a wide pattern of hospitals in the area that either claimed they received zero (0) requests, making them excluded from tracking this information, or simply tracked a small enough representative example of single digit compliance to hit the fifty percent (50%)

27

compliance mark required by the rule. 'Cutting corners' in such a manner would represent a fraudulent course of action that would save hospitals the time of bothering to track their compliance, while still ensuring easy access to grant funding.

129. In comparison with the hundreds of requests issued to some hospitals, the Statistically Correlated Defendants all represent hospitals which had several inexplicable years where they aberrantly reported receiving zero (0) requests (claiming to be exempt), or otherwise provided reporting numbers in the single or lower numeral digits that just happened to hit the fifty percent (50%) mark needed to get millions in grant funding.

130. Defendant Huntington Memorial Hospital, Inc., reported compliance figures of 0/0 and 4/4 in 2012 and 2013, respectively.

131. Defendant St. Joseph Health System, LLC, reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013.

132. Defendant Terre Haute Regional Hospital, L.P. reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013.

133. Defendant Columbus Regional Hospital reported compliance figures of 1/1 in 2013.

134. Defendant RHN Clark Memorial Hospital, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

135. Defendant Indiana University Health Inc. reported compliance figures of 2/2 in 2012, and then reported suddenly seeing an increase to 355/363 the following year in 2013.

136. Defendant Warsaw Health System, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

137. Defendant Major Hospital reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013.

138. Defendant Lutheran Musculoskeletal Center, LLC, reported no figures while claiming an exemption in 2012, and 0/0 for 2013.

139. Defendant Whitley Memorial Hospital, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively.

140. Defendant Indiana University Health Bloomington, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

141. Defendant Porter Hospital, LLC, reported compliance figures of 0/0 for 2013.

142. Defendant Good Samaritan Hospital reported compliance figures of 1/1 and 3/4 in 2012 and 2013, respectively.

143. Defendant Indiana University Health Ball Memorial Hospital, Inc., reported no compliance figures in 2012 while claiming an exemption, but the number suddenly rose to 260/260 in 2013.

144. Defendant Parkview Wabash Hospital, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively.

145. Defendant Woodlawn Hospital, Inc., reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively.

146. Defendant Union Hospital, Inc.'s Clinton, Indiana facility reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively.

147. Union Hospital, Inc.'s Terre Haute, Indiana facility reported compliance figures of 0/0 and 0/0 in 2013 and 2013. [3]

148. Defendant IOM Health System, LP, reported compliance figures of 0/0, 0/0, and 0/0 for years 2011 through 2013.

---

[3] The Federal government's compiled data entered for this facility shows an Attestation of 0/0 on October 15, 2013, and another entry of 0/0 on October 24, 2013. It is not clear if the data was resubmitted, duplicated, or intended to be entered for another year such as 2011 or 2012.

149. Defendant Franciscan Alliance, Inc.'s Hammond, Indiana facility reported compliance figures of 0/0 and 6/6 for years 2012 and 2013, respectively.

150. Defendant Franciscan Alliance, Inc.'s Crown Point, Indiana facility reported compliance figures of 0/0 for 2013.

151. Defendant Franciscan Alliance, Inc.'s Indianapolis, Indiana facility reported compliance figures of 0/0 in 2013.

152. Defendant Franciscan Alliance, Inc.'s Lafayette, Indiana facility reported compliance figures of 2/2 in 2013.

153. Defendant Franciscan Alliance, Inc.'s Crawfordsville, Indiana facility reported compliance figures of 0/3 for 2013.

154. Defendant Franciscan Alliance, Inc.'s Mooresville, Indiana facility reported compliance figures of 0/0, 0/0, and 10/10 from 2011 through 2013.

155. Defendant Franciscan Alliance, Inc.'s Michigan City, Indiana facility reported compliance figures of 0/0 in 2013.

156. Defendant Franciscan Alliance, Inc.'s Dyer, Indiana facility reported compliance figures of 0/0, and 20/20 in 2012 and 2013, respectively.

157. Defendant Pulaski Memorial Hospital reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively.

158. Defendant Dearborn County Hospital reported compliance figures of 2/3 and 0/0 in 2012 and 2013, respectively.

159. Defendant Indiana University Health Arnett, Inc., reported no compliance figures claiming an exemption in 2012, and claimed figures of 10/10 for 2013.

160. Defendant Johnson Memorial Hospital reported no compliance figures for 2012 while claiming an exemption, and claimed figures 2/2 in 2013.

30

161. Defendant Henry County Memorial Hospital reported compliance figures of 0/0 and 2/2 in 2012 and 2013, respectively.

162. Defendant Parkview Hospital, Inc., reported compliance figures of 0/0 for 2012, suddenly jumping up to 437/438 in 2013.

163. Defendant Bluffton Health System, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

164. Defendant Cameron Memorial Community Hospital, Inc., reported compliance figures of 0/0 for 2012.

165. Defendant Community Hospital of Noble County, Inc., reported compliance figures of 0/0 and 8/8 in 2012 and 2013, respectively.

166. Defendant Hancock Regional Hospital reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively.

167. Defendant The Methodist Hospitals, Inc., reported compliance figures of 4/5, 2/2, and 10/10 from 2011 through 2013

168. Defendant Elkhart General Hospital, Inc., reported compliance figures of 4/4 in 2013.

169. Defendant Rush Memorial Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

170. Defendant Baptist Healthcare System, Inc. reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively.

171. Defendant Fayette Memorial Hospital Association, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively.

172. Defendant Dupont Hospital, LLC, reported compliance figures of 2/3, 3/4, and 0/0 from 2011 through 2013.

173. Defendant Indiana University Health Bedford, Inc., reported compliance figures of 2/2 and 0/0 in 2012 and 2013, respectively.

174. Defendant Margaret Mary Community Hospital, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

175. Defendant St. Mary Medical Center, Inc., reported compliance figures of 0/0 and 7/9 in 2012 and 2013, respectively.

176. Defendant The Health and Hospital Corporation of Marion County reported compliance figures of 0/0 in 2013.

177. Defendant Community Hospital of Bremen, Inc., reported compliance figures of 0/0 in 2013.

178. Defendant Orthopaedic Hospital at Parkview North, LLC, reported compliance figures of 0/0 and 15/15 in 2012 and 2013, respectively.

179. Defendant Indianapolis Osteopathic Hospital, Inc., reported compliance figures of 2/2 and 0/0 in 2012 and 2013, respectively.

180. Defendant St. Vincent Carmel Hospital, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

181. Defendant St. Vincent Anderson Regional Hospital, Inc., reported compliance figures of 0/0 and 6/6 in 2012 and 2013, respectively.

182. Defendant Community Hospital of LaGrange County, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively.

183. Defendant Adams County Memorial Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

184. Defendant St. Catherine Hospital, Inc., reported compliance figures of 1/1 and 6/6 in 2012 and 2013, respectively.

32

185. Defendant Jackson County Schneck Memorial Hospital reported compliance figures of 45/47 and 0/0 in 2012 and 2013, respectively.

186. Defendant Perry County Memorial Hospital reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively.

187. Defendant Indiana University Health White Memorial Hospital, Inc, reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively.

188. Defendant Marion General Hospital, Inc., reported compliance figures of 0/0 in 2013.

189. Defendant Daviess County Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

190. Defendant Indiana University Health Starke Hospital, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

191. Defendant Community Howard Regional Health, Inc., reported compliance figures of 0/0 for 2013.

192. Defendant Dekalb Memorial Hospital, Inc., reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively.

193. Defendant Putnam County Hospital reported no compliance figures in 2012 while claiming an exemption, and 1/1 for 2013.

194. Defendant Indiana University Health Paoli, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively.

195. Defendant Decatur County Memorial Hospital reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively.

196. In comparison with the numbers reported at various hospitals throughout Indiana and the country, the reported figures from the Statistically Correlated Defendants are highly

33

aberrant and so low as to defy any rationale belief in their accuracy. The numbers are so low as to highly suggest widespread and flagrant abuse of the EHR Incentive program throughout Indiana hospitals.

197. The terms of eligibility for the EHR Incentive Program requires that the Original Hospital Defendants and the Statistically Correlated Defendants must mandatorily keep all documentation to establish the veracity of their reported compliance data. This raw documentation was never turned over to the government, and is solely within the possession of the Original Hospital Defendants and the Statistically Correlated Defendants.

198. The documentation within the possession of the defendants necessary to prove that fraudulent nature of the reported compliance data can be described with specificity. The plaintiff/relators require copies of all documents requesting the production of medical records during the limited applicable time frame in order to determine how many of those requests specifically requested the information in an electronic format. Additionally, any documentation noting the date upon which such a request was issued or received.

199. Secondly, that number of requests for electronic records will need to be reviewed against the dates, formats, and billing information for any medical records issued to patients or their agents in order to determine if the reported compliance data was correct or not in relation to the number of times that electronic records were produced within three (3) business days.

200. The best estimate available to the plaintiff/relators shows that according to Federal government records, the Original Hospital Defendants and the Statistically Correlated Defendants have received payments under the EHR Incentive program in a staggering amount. Combined, these defendant hospitals during the three year period at issue were paid $228,231,431.05 in grant funding under the Medicare portion of the program, and $96,154,738.27 under the Medicaid portion of the program. In sum, these hospitals have been

paid $324,386,169.32 in public funding from the citizens of the United States in return for the promise that patients would be provided with fast, cheap, easy access to their electronic health records, and these hospitals have failed to keep that promise.

201. A failure to properly track and report Core Measure 11 means that the defendant hospitals did not achieve 'meaningful use' as defined by the legislation and its ensuing rules. This means that they were not eligible to receive *any* funding under this program, and have sought and received the grant funding at issue in a fraudulent manner that constitute false claims for public funding.

### V. Causes of Action against the Original Hospital Defendants and Ciox Health, LLC

### Count I – Violation of the False Claims Act

202. The actions of the Original Hospital Defendants constitute violations of the False Claims Act as located at 31 U.S.C. § 3729 for the knowing submission and/or conspiracy to create and submit false statements and claims for the purposes of obtaining money through a Federal government program.

203. The Original Hospital Defendants have knowingly and illegally sought and obtained claims through the EHR Program by submitting false claims and Attestation documents reporting false figures to the Federal government in return for public funding.

204. The Original Hospital Defendants have knowingly created and reported false statistics and Attestation documentation expressly certifying their compliance with particular statutes, regulations, and terms under which they qualified and received millions of dollars of public grant funding.

205. By failing to properly track and meet the requirements of Core Measure 11 under the EHR Program, the Original Hospital Defendants knowingly defrauded a public grant program for which they were not even eligible for.

206. That CIOX Health, LLC, through its associations with the Original Hospital Defendants as its business associate handling the provision of medical records to patients, knowingly assisted in the provision of false reporting figures to the Federal government despite knowledge of the requirements of Core Measure 11. Ciox has conspired with or is otherwise responsible for causing false statements to be issued to the Federal government for payments under the EHR Program to the Original Hospital Defendants.

207. The United States of America was unaware of the falsity of these claims made by the Original Hospital Defendants. In reliance upon the factual accuracy of the Attestation documents submitted by the Original Hospital Defendants, and false proclamations of figures showing that the Original Hospital Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Original Hospital Defendants.

208. Without the false claims and false figures provided to the Federal government by the Defendants, the Original Hospital Defendants would have been ineligible for grant funding under the voluntary EHR Program.

209. That as a result of these actions, the Original Hospital Defendants and Ciox have defrauded the United States of America and its tax-paying citizens, who have suffered damages that number in millions of dollars of grant funding that never should have been provided to them.

**Count II – Violation of the Anti-Kickback Statute**

210. The Original Hospital Defendants, through their business associations, are jointly and severally liable for the conduct of their business associate, CIOX Health, LLC.

211. To add insult to injury, the Original Hospital Defendants and Ciox did more than simply defraud the United States of America by taking grant funding that they were not eligible for. Not only did they fail to provide patients with the fast, cheap access to electronic records that was a requirement of receiving the grant funding at issue; they then sought to additionally profit

by knowingly over-billing for the production of those medical records by seeking hundreds of dollars rather than the reasonable remuneration allowed under the HITECH Act.

212. As part of the business relationship between the Original Hospital Defendants and CIOX Health, LLC, these defendants knowingly engaged in a scheme through which they illegally sought and received direct and/or indirect remuneration for the illegal sale of medical records to patients in violation of their rights under the HITECH Act. By failing to comply with the HITECH Act, the Original Hospital Defendants and Ciox were able to bill substantially larger amounts for the production of the same materials that could have simply been placed upon a disc or flash drive as intended by the HITECH Act.

213. As part of this business relationship, these defendants relied upon the provision of illegally obtained grant funding from the EHR Program to cover the costs of compliance for the provision of medical records to patients, while knowingly seeking to directly and/or indirectly receive remuneration for profit at the expense of the citizens of the United States of America.

214. The conduct of the defendants in seeking to directly and/or indirectly receive remuneration illegally and in violation of the HITECH Act constitutes a violation of the Anti-Kickback Statute for which the parties are subject to fines and damages for each instance in which the defendants acted together to illegally over-charge patients.

215. By illegally seeking remuneration in violation of the Anti-Kickback Statute, the defendants are subject to liability under the False Claims Act through a *qui tam* action.

**Count III – Violation of the related Indiana statutes**

216. The exact same conduct identified as violations of the Federal False Claims Act and the Anti-Kickback Statute constitute violations of the laws of the state of Indiana in relation to the portion of funding which was provided through the state-operated Medicaid program for the EHR Program.

217. Indiana has its own False Claims and Whistleblower Protection Act located at Ind. Code § 5-11-5.5-1 *et seq*., along with another separate but similar statute to specifically address payments issued under the Medicaid program, located at Ind. Code § 5-11-5.7-1 *et seq*. These statutes contain *qui tam* provisions similar to the Federal statutes located at Ind. Code § 5-11-5.5-4 and Ind. Code § 5-11-5.7-4, allowing for the Indiana attorney general or inspector general to intervene in relator claims in order to protect claims of the state of Indiana and its citizens for the misuse of public funds pursuant to Ind. Code § 5-11-5.5-5 and Ind. Code § 5-11-5.7-5.

218. Additionally, the Indiana Medicaid false claims act follows the Federal statute by incorporating anti-kickback provisions into its definition of false claims.

219. The Medicaid portion of this statute specifically references claims, statements, records, or omissions made or submitted in relation to or violations of the Indiana Medicaid program pursuant to Ind. Code § 12-15. This includes conduct which wrongfully deprives the state of Indiana of public funds pursuant to Ind. Code § 12-15-24-1, as well as soliciting, offering, or receiving kickbacks, fees, or rebates pursuant to Ind. Code § 12-15-24-2.

220. For the same rationale and factual reasons by which the Original Hospital Defendants and Ciox are liable to the United States of America for false claims and anti-kickback violations, the Original Hospital Defendants and Ciox are additionally liable directly to the state of Indiana for violations of these state statutes.

221. Similar to their federal cousins, these state statutes allow the state of Indiana to pursue claims for nearly identical civil penalties, treble damages, and costs of civil litigation. Ind. Code § 5-11-5.5-2 and Ind. Code § 5-11-5.7-2.

222. Accordingly, for causing damage to the state of Indiana by the misuse of millions of dollars of grant funding, the Original Hospital Defendants and Ciox are liable to the state of Indiana according to the provisions of these state level statutes.

### VI. Causes of Action against the Statistically Correlated Defendants

### Count IV – Violation of the False Claims Act

223. The actions of the Statistically Correlated Defendants constitute violations of the False Claims Act as located at 31 U.S.C. § 3729 for the knowing submission and/or conspiracy to create and submit false statements and claims for the purposes of obtaining money through a Federal government program.

224. The Statistically Correlated Defendants have knowingly and illegally sought and obtained claims through the EHR Program by submitting false claims and Attestation documents reporting false figures to the Federal government in return for public funding.

225. The Statistically Correlated Defendants have knowingly created and reported false statistics and Attestation documentation expressly certifying their compliance with particular statutes, regulations, and terms under which they qualified and received millions of dollars of public grant funding.

226. By failing to properly track and meet the requirements of Core Measure 11 under the EHR Program, the Statistically Correlated Defendants knowingly defrauded a public grant program for which they were not even eligible for.

227. The plaintiff/relators presently have no information to confirm each and every individual Release of Information ("ROI") provider or business associates that the Statistically Correlated Defendants might have utilized in a fashion to similar to the Original Hospital Defendants' use of Ciox. Any similar relationships with ROI providers used by the Statistically Correlated Defendants would similarly make the Statistically Correlated Defendants responsible for causing false statements to be issued to the Federal government for payments under the EHR Program to the Statistically Correlated Defendants.

228. The United States of America was unaware of the falsity of these claims made by the Statistically Correlated Defendants. In reliance upon the factual accuracy of the Attestation documents submitted by the Statistically Correlated Defendants, and false proclamations of figures showing that the Statistically Correlated Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Statistically Correlated Defendants.

229. Without the false claims and false figures provided to the Federal government, the Statistically Correlated Defendants would have been ineligible for grant funding under the voluntary EHR Program.

230. That as a result of these actions, the Statistically Correlated Defendants have defrauded the United States of America and its tax-paying citizens, who have suffered damages that number in millions of dollars of grant funding that never should have been provided to them.

**Count V – Violation of the Anti-Kickback Statute**

231. The Statistically Correlated Defendants, through any as yet unknown ROI providers or business associations they have utilized, are jointly and severally liable for the conduct of their business associates to the extent that kickbacks were sought or patients were illegally over-billed for access to their medical records.

232. To add insult to injury, the Statistically Correlated Defendants did more than simply defraud the United States of America by taking grant funding that they were not eligible for. Not only did they fail to provide patients with the fast, cheap access to electronic records that was a requirement of receiving the grant funding at issue; they then allowed any ROI providers or business associates that they utilize to additionally profit by knowingly over-billing for the production of those medical records by seeking hundreds of dollars rather than the reasonable remuneration allowed under the HITECH Act.

233. As part of the business relationship between the Statistically Correlated Defendants and any as yet unknown ROI providers or business associates, these defendants knowingly engaged in a scheme through which they illegally sought and received direct and/or indirect remuneration for the illegal sale of medical records to patients in violation of their rights under the HITECH Act. By failing to comply with the HITECH Act, the Statistically Correlated Defendants allowed their ROI providers or business associates to bill substantially larger amounts for the production of the same materials that could have simply been placed upon a disc or flash drive as intended by the HITECH Act.

234. As part of this business relationship, these defendants relied upon the provision of illegally obtained grant funding from the EHR Program to cover the costs of compliance for the provision of medical records to patients, while knowingly seeking to directly and/or indirectly receive remuneration for profit at the expense of the citizens of the United States of America.

235. The conduct of the defendants in seeking to directly and/or indirectly receive remuneration illegally and in violation of the HITECH Act constitutes a violation of the Anti-Kickback Statute for which the Statistically Correlated Defendants are subject to fines and damages for each instance in which the defendants allowed any over-charge of their patients.

236. By illegally seeking remuneration in violation of the Anti-Kickback Statute, the Statistically Correlated Defendants are subject to liability under the False Claims Act through a *qui tam* action.

### Count VI – Violation of the related Indiana statutes

237. The exact same conduct identified as violations of the Federal False Claims Act and the Anti-Kickback Statute constitute violations of the laws of the state of Indiana in relation to the portion of funding which was provided through the state-operated Medicaid program for the EHR Program.

41

238. Indiana has its own False Claims and Whistleblower Protection Act located at Ind. Code § 5-11-5.5-1 *et seq.*, along with another separate but similar statute to specifically address payments issued under the Medicaid program, located at Ind. Code § 5-11-5.7-1 *et seq*. These statutes contain *qui tam* provisions similar to the Federal statutes located at Ind. Code § 5-11-5.5-4 and Ind. Code § 5-11-5.7-4, allowing for the Indiana attorney general or inspector general to intervene in relator claims in order to protect claims of the state of Indiana and its citizens for the misuse of public funds pursuant to Ind. Code § 5-11-5.5-5 and Ind. Code § 5-11-5.7-5.

239. Additionally, the Indiana Medicaid false claims act follows the Federal statute by incorporating anti-kickback provisions into its definition of false claims.

240. The Medicaid portion of this statute specifically references claims, statements, records, or omissions made or submitted in relation to or violations of the Indiana Medicaid program pursuant to Ind. Code § 12-15. This includes conduct which wrongfully deprives the state of Indiana of public funds pursuant to Ind. Code § 12-15-24-1, as well as soliciting, offering, or receiving kickbacks, fees, or rebates pursuant to Ind. Code § 12-15-24-2.

241. For the same rationale and factual reasons by which the Statistically Correlated Defendants are liable to the United States of America for false claims and anti-kickback violations, the Statistically Correlated Defendants are additionally liable directly to the state of Indiana for violations of these state statutes.

242. Similar to their federal cousins, these state statutes allow the state of Indiana to pursue claims for nearly identical civil penalties, treble damages, and costs of civil litigation. Ind. Code § 5-11-5.5-2 and Ind. Code § 5-11-5.7-2.

243. Accordingly, for causing damage to the state of Indiana by the misuse of millions of dollars of grant funding, the Statistically Correlated Defendants are liable to the state of Indiana according to the provisions of these state level statutes.

## **Prayer for Relief**

Wherefore, the Relators, on behalf of the United States of America and the State of Indiana, respectfully requests this Court to find that the Defendants have damaged the United States and the State of Indiana as a result of their conduct in violation of the False Claims Act, the Anti-Kickback Statute, and their derivative state statutory claims. The Plaintiff/Relators pray that judgment be entered against the Defendants for all applicable damages, including but not limited to the following:

a.      Enter a judgment in favor the Plaintiff/Relators and against the Defendants;

b.      Award treble damages three times the actual damage amount suffered by the United States for all funding issued to the Defendants under the EHR Program;

c.      Issue Civil Penalties for each and every false claim submitted by the Defendants to the United States and the State of Indiana;

d.      Issue Civil Penalties against the Defendants for each and every instance in which the Defendants illegally sought kickback remuneration by over-billing for medical records in violation of the HITECH Act;

e.      Grant the Relators a fair and reasonable amount for any award for its contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and 3730(d) of the False Claims Act and the related state law provisions located at Ind. Code § 5-11-5.5-6 and Ind. Code § 5-11-5.7-6;

f.      For an award of attorney's fees and reasonable expenses incurred in this litigation, including reasonable attorney and expert fees;

g.      Pre-judgment and post-judgment interest;

h.      For the costs of this action;

      i.     For any and all other further and general relief to which the Plaintiff may be entitled.

Respectfully submitted,

Michael P. Misch (#27970-71)
Bradley P. Colborn (#28501-20)
ANDERSON · AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone:  574.288.1510
Facsimile:   574.288.1650
Misch@aaklaw.com
Colborn@aaklaw.com
*Attorneys for Plaintiff/Relators*