IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL P. MISCH, BRADLEY P. COLBORN, AND THE LAW FIRM OF ANDERSON, AGOSTINO & KELLER, P.C., ON BEHALF OF THE UNITED STATES OF AMERICA, AND THE STATE OF INDIANA,<br><br>     Plaintiff/Relators,<br><br>   v.<br><br>MEMORIAL HOSPITAL OF SOUTH BEND, INC.; SAINT JOSEPH REGIONAL MEDICAL CENTER, INC.; SAINT JOSEPH REGIONAL MEDICAL CENTER – PLYMOUTH CAMPUS, INC.; ST. VINCENT HOSPITAL AND HEALTH CARE CENTER, INC.; CIOX HEALTH, LLC; HUNTINGTON MEMORIAL HOSPITAL, INC.; ST. JOSEPH HEALTH SYSTEM, LLC; TERRE HAUTE REGIONAL HOSPITAL, LP; COLUMBUS REGIONAL HOSPITAL; RHN CLARK MEMORIAL HOSPITAL, LLC; INDIANA UNIVERSITY HEALTH, INC.; WARSAW HEALTH SYSTEM, LLC; MAJOR HOSPITAL; LUTHERAN MUSCULOSKELETAL CENTER, LLC; WHITLEY MEMORIAL HOSPITAL, INC.; INDIANA UNIVERSITY HEALTH BLOOMINGTON, INC.; PORTER HOSPITAL, LLC; GOOD SAMARITAN HOSPITAL; INDIANA UNIVERSITY HEALTH BALL MEMORIAL HOSPITAL, INC.; PARKVIEW WABASH HOSPITAL, INC.; WOODLAWN HOSPITAL, INC.; UNION HOSPITAL, INC.; IOM HEALTH SYSTEM, LP; FRANCISCAN ALLIANCE, INC.; PULASKI MEMORIAL HOSPITAL; DEARBORN COUNTY HOSPITAL; INDIANA UNIVERSITY HEALTH ARNETT, INC.; JOHNSON MEMORIAL HOSPITAL; HENRY COUNTY MEMORIAL HOSPITAL; PARKVIEW HOSPITAL, INC.; BLUFFTON HEALTH SYSTEM, LLC; CAMERON MEMORIAL HOSPITAL, INC.; COMMUNITY HOSPITAL OF NOBLE COUNTY, INC.; HANCOCK REGIONAL HOSPITAL; THE METHODIST HOSPITALS, INC.; ELKHART GENERAL HOSPITAL, INC.; RUSH MEMORIAL HOSPITAL; BAPTIST HEALTHCARE SYSTEM, INC.; FAYETTE MEMORIAL HOSPITAL ASSOCIATION, INC.; DUPONT HOSPITAL, LLC; INDIANA UNIVERSITY HEALTH BEDFORD, INC.; MARGARET MARY COMMUNITY HOSPITAL, INC.; ST. MARY MEDICAL CENTER, INC.; THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY; COMMUNITY HOSPITAL OF BREMEN, INC.; ORTHOPAEDIC HOSPITAL AT PARKVIEW NORTH, LLC; INDIANAPOLIS OSTEOPATHIC HOSPITAL, INC.; ST. VINCENT CARMEL HOSPITAL, INC.; ST. VINCENT | CASE NO. 3:16CV587 |

ANDERSON REGIONAL HOSPITAL, INC.; COMMUNITY           )
HOSPITAL OF LAGRANGE COUNTY, INC.; ADAMS COUNTY       )
MEMORIAL HOSPITAL; ST. CATHERINE HOSPITAL, INC.;      )
JACKSON COUNTY SCHNECK MEMORIAL HOSPITAL; PERRY       )
COUNTY MEMORIAL HOSPITAL; INDIANA UNIVERSITY          )
HEALTH WHITE MEMORIAL HOSPITAL, INC.; MARION          )
GENERAL HOSPITAL, INC.; DAVIESS COUNTY HOSPITAL;      )
INDIANA UNIVERSITY HEALTH STARKE HOSPITAL, LLC;       )
COMMUNITY HOWARD REGIONAL HEALTH, INC.; DEKALB        )
MEMORIAL HOSPITAL, INC.; PUTNAM COUNTY HOSPITAL;      )
INDIANA UNIVERSITY HEALTH PAOLI, INC.; AND DECATUR    )
COUNTY MEMORIAL HOSPITAL,                             )
                                                     )
                              Defendants.             )

# SECOND AMENDED COMPLAINT FOR DAMAGES

## I. INTRODUCTION

1.      The United States of America and the State of Indiana, by and through its *qui tam*

relators, Michael P. Misch, Bradley P. Colborn, and the law firm of Anderson, Agostino & Keller,

P.C. (collectively, the "Plaintiff/Relators"), brings this action under 31 U.S.C. §§ 3729-32 (the

"False Claims Act") to recover from the defendants all damages, penalties and other remedies

available to the United States of America for violations of the False Claims Act, as well as the State

of Indiana for similar state level claims.

2.      The Plaintiff/Relators also seek to recover for all damages, penalties, and remedies

available to the United States of America and State of Indiana for violations of law under 42 U.S.C.

§§ 1320a-7a and 1320a-7b (the "Anti-Kickback Statute") to recover from the defendants all

damages, penalties and other remedies available to the United States of America for violations of

the Anti-Kickback Statute.  While *qui tam* relator actions were not originally allowed under the

Anti-Kickback Statute, claims for violations may now be brought as *per se* violations of the False Claims Act under 42 U.S.C. § 1320a-7b(g).

## II. JURISDICTION AND VENUE

3.       This Court has jurisdiction over this case under 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

4.       Under 31 U.S.C. § 3732(a), the Northern District of Indiana is the proper venue for this case because it is the judicial district in which the events and omissions that gave rise to the Plaintiff/Relators' claims occurred, as well as the judicial district where several of the defendant hospitals are located.

5.       Many states have their own derivative versions of statutes applicable to cases involving false claims and kickbacks.  Seeking false claims or kickbacks in relation to the Indiana Medicaid program is prohibited pursuant to Ind. Code § 5-11-5.7-1 *et seq*. and Ind. Code § 12-15-24-1 *et seq*.  The  statutes at issue in this case provide courts with jurisdiction to hear related state law claims based upon the same transaction or occurrence pursuant to 31 U.S.C. § 3732(b).

## III. PARTIES

6.       Relators Michael P. Misch and Bradley P. Colborn are individuals and attorneys residing within Indiana, bringing this case on behalf of and as part of their work for the law firm of Anderson, Agostino & Keller, P.C., a domestic professional corporation incorporated under the laws of the State of Indiana.

7.       Defendant Memorial Hospital of South Bend, Inc., is an Indiana corporation operating a hospital commonly known as "Memorial Hospital" located at 615 N. Michigan Street,

South Bend, Indiana 46601.  The Center for Medicare and Medicaid Services has assigned Memorial Hospital a unique ten (10) digit National Provider Identifier ("NPI number") of 1295772093. Memorial Hospital's Registered Agent for service of process is Mr. Kreg Gruber, 615 N. Michigan Street, South Bend, Indiana 46601.

8.     Defendant Saint Joseph Regional Medical Center, Inc., is an Indiana nonprofit corporation operating a hospital commonly known as the "St. Joseph Mishawaka Medical Center" located at 5214 Holy Cross Parkway, Mishawaka, Indiana 46545.  This facility's NPI number is 1841245594.  The Registered Agent for service of process to this defendant is CT Corporation System, 150 W. Market Street, Indianapolis, Indiana 46204.

9.     Defendant Saint Joseph Regional Medical Center – Plymouth Campus, Inc., is a nonprofit corporation operating a hospital commonly known as the "St. Joseph Plymouth Medical Center" located at 1915 Lake Avenue, Plymouth, Indiana 46563.  This facility's NPI number is 1174571129.  The Registered Agent for service of process to this defendant is CT Corporation System, 150 W. Market Street, Indianapolis, Indiana 46204.

10.     Defendant St. Vincent Hospital and Health Care Center, Inc., is an Indiana corporation operating a hospital commonly known as "St. Vincent Indianapolis Hospital" located at 2001 W. 86th Street, Indianapolis, Indiana 46260.  This facility's NPI number is 1306898960.  The Registered Agent for service of process to this defendant is Mr. Stephan C. Masoncup, 10330 N. Meridian Street,, Suite 401, Indianapolis, Indiana 46290.

11.     Defendant CIOX Health, LLC (f/k/a HealthPort Technologies, LLC), is a Georgia corporation that contracts to provide medical records for hospitals with a principal place of business located at 925 N. Point Parkway, Suite 350, Alpharetta, Georgia 30005.  The Registered Agent for

service of process to this defendant is Corporation Service Company, 135 N. Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

12.    Defendant Huntington Memorial Hospital, Inc., is a corporation operating a hospital at 2001 Stutts Road, Huntington, Indiana 46750.  This facility's NPI number is 1003821729.  The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

13.    Defendant St. Joseph Health System, LLC, is a corporation operating a hospital at 700 Broadway, Fort Wayne, Indiana 46802.  This facility's NPI number is 1023060472.  The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

14.    Defendant Terre Haute Regional Hospital, L.P., is a limited partnership operating a hospital at 3901 S. 7th Street, Terre Haute, Indiana 47802.  This facility's NPI number is 1073550133.  The Registered Agent for service of process to this defendant is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

15.    Defendant Columbus Regional Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 2400 East 17th Street, Columbus, Indiana 47201.  This facility's NPI number is 1104998624.

16.    Defendant RHN Clark Memorial Hospital, LLC, is a limited liability company operating a hospital at 1220 Missouri Avenue, Jeffersonville, Indiana 47130.  This facility's NPI number is 1134186315.  The Registered Agent for service of process to this defendant is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

17.    Defendant Indiana University Health Inc. is a corporation operating a hospital at 1701 N. Senate Avenue, Indianapolis, Indiana 46202.  This facility's NPI number is 1144266024. The

Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 West 10th Street, Suite 6100, Indianapolis, Indiana 46202.

18.     Defendant Warsaw Health System, LLC, is a limited liability company operating a hospital at 2101 Dubois Drive, Warsaw, Indiana 46580. This facility's NPI number is 1164475711. The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

19.     Defendant Major Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 150 W. Washington Street, Shelbyville, Indiana 46176. This facility's NPI number is 1174555692.

20.     Defendant Lutheran Musculoskeletal Center, LLC, is a limited liability company operating a hospital at 7952 W. Jefferson Blvd., Fort Wayne, Indiana 46804. This facility's NPI number is 1174706576. The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

21.     Defendant Whitley Memorial Hospital, Inc., is a corporation operating a hospital at 1260 E. State Road 205, Columbia City, Indiana 46725. This facility's NPI number is 1205844495. The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46895.

22.     Defendant Indiana University Health Bloomington, Inc., is a corporation operating a hospital at 601 W. 2nd Street, Bloomington, Indiana 47403. This facility's NPI number is 1205860335. The Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

23.     Defendant Porter Hospital, LLC, is a limited liability company operating a hospital at 85 E. U.S. Highway 6, Valparaiso, Indiana 46383. This facility's NPI number is 1215151154.

The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

24.    Defendant Good Samaritan Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 520 S. 7th Street, Vincennes, Indiana 47591. This facility's NPI number is 1225032881.

25.    Defendant Indiana University Health Ball Memorial Hospital, Inc., is a corporation operating a hospital at 2401 W. University Avenue, Muncie, Indiana 47303. This facility's NPI number is 1225195340. The Registered Agent for service of process to this defendant is Ms. Michelle Altobella, 2401 West University Avenue, Muncie, Indiana 47303.

26.    Defendant Parkview Wabash Hospital, Inc., is a corporation operating a hospital at 710 N. East Street, Wabash, Indiana 46992. This facility's NPI number is 1245259878. The Registered Agent for service of process to this defendant is Mr. David D. Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

27.    Defendant Woodlawn Hospital, Inc., is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1400 E. 9th Street, Rochester, Indiana 46975. This facility's NPI number is 1265413405.

28.    Defendant Union Hospital, Inc., is a corporation operating a hospital at 801 S. Main Street, Clinton, Indiana 47842. This facility's NPI number is 1306844519. The Registered Agent for service of process to this defendant is Mr. B. Curtis Wilkinson, 333 Ohio Street, Terre Haute, Indiana 47807.

29.    Defendant Union Hospital, Inc, operates a second and separate hospital facility located at 1606 N. 7th Street, Terre Haute, Indiana 47804. This facility's NPI number is

1619975331.  The Registered Agent for service of process to this defendant is Mr. B. Curtis Wilkinson, 333 Ohio Street, Terre Haute, Indiana 47807.

30.    Defendant IOM Health System, LP, is a limited partnership operating a hospital at 7950 W. Jefferson Blvd., Fort Wayne, Indiana 46804.  This facility's NPI number is 1306897335. The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

31.    Defendant Franciscan Alliance, Inc., is a corporation operating a hospital commonly known as "Franciscan St. Margaret Hammond" at 5454 Hohman Avenue, Hammond, Indiana 46320.  This facility's NPI number is 1306921911.  The Registered Agent for service of process to this defendant is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

32.    Defendant Franciscan Alliance, Inc., operates a second hospital facility commonly known as "Franciscan St. Anthony Crown Point" at 1201 S. Main Street, Crown Point, Indiana 46307.   This facility's NPI number is 1336205798.  The Registered Agent for service of process to this defendant is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

33.    Defendant Franciscan Alliance, Inc., operates a third hospital facility commonly known as "Franciscan St. Francis Indianapolis" at 8111 S. Emerson Avenue, Indianapolis, Indiana 46237.  This facility's NPI number is 1386749893.  The Registered Agent for service of process to this defendant is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

34.    Defendant Franciscan Alliance, Inc., operates a fourth hospital facility commonly known as "Franciscan St. Elizabeth Lafayette" at 1501 Hartford Street, Lafayette, Indiana 47904. This facility's NPI number is 1538253521.  The Registered Agent for service of process to this defendant is Franciscan Alliance, Inc., 1515 W. Dragoon Trail, Mishawaka, Indiana 46544.

35.     Defendant Franciscan Alliance, Inc. operates a fifth hospital facility commonly known as "Franciscan St. Elizabeth Crawfordsville" at 1710 Lafayette Road, Crawfordsville, Indiana 47933.  This facility's NPI number is 1588774558.  The Registered Agent for service of process to this defendant is Franciscan Alliance, Inc., 1515 W. Dragoon Trial, Mishawaka, Indiana 46544.

36.     Defendant Franciscan Alliance, Inc., operates a sixth hospital facility commonly known as "Franciscan St. Francis Mooresville" at 1201 Hadley Road, Mooresville, Indiana 46158.  This facility's NPI number is 1679678197.  The Registered Agent for service of process is to this defendant Mr. Kevin D. Leahy, 1515 W. Dragoon Trail, Mishawaka, Indiana 46544.

37.     Defendant Franciscan Alliance, Inc., operates a seventh hospital facility commonly known as "Franciscan St. Anthony Michigan City" at 301 W. Homer Street, Michigan City, Indiana 46362.  This facility's NPI number is 1710051941.  The Registered Agent for service of process to this defendant is Mr. Kevin D.Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

38.     Defendant Franciscan Alliance, Inc., operates an eighth hospital facility commonly known as "Franciscan St. Margaret Dyer" located 24 Joliet Street, Dyer, Indiana 46311.  This facility's NPI number is 1811077431.  The Registered Agent for service of process to this defendant is Mr. Kevin D. Leahy, 1515 Dragoon Trail, Mishawaka, Indiana 46544.

39.     Defendant Pulaski Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 616 E. 13th Street, Winamac, Indiana 46996.  This facility's NPI number is 1306928213.

40.     Defendant Dearborn County Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 600 Wilson Creek Road, Lawrenceburg, Indiana 47025.  This facility's NPI number is 1326142498.

41.    Defendant Indiana University Health Arnett, Inc., is a corporation operating a hospital at 5165 McCarty Lane, Lafayette, Indiana 47905.  This facility's NPI number is 1326296211.  The Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 W. 10th Street, Sixth Floor, Indianapolis, Indiana 46202.

42.    Defendant Johnson Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1125 W. Jefferson Street, Franklin, Indiana 46131.  This facility's NPI number is 1346248986.

43.    Defendant Henry County Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1000 N. 16th Street, New Castle, Indiana 47362.  This facility's NPI number is 1356428429.

44.    Defendant Parkview Hospital, Inc., is a corporation operating a hospital at 11109 Parkview Plaza Drive, Fort Wayne, Indiana 46845.  This facility's NPI number is 1366407603.  The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

45.    Defendant Bluffton Health System, LLC, is a limited liability company operating a hospital at 303 S. Main Street, Bluffton, Indiana 46714.  This facility's NPI number is 1376594366. The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

46.    Defendant Cameron Memorial Community Hospital, Inc., is a corporation operating a hospital at 416 E. Maumee Street, Angola, Indiana 46703.  This facility's NPI number is 1386683316.  The Registered Agent for service of process to this defendant is Mr. Douglas Bomba, 416 E. Maumee Street, Angola, Indiana 46703.

47.    Defendant Community Hospital of Noble County, Inc., is a corporation operating a hospital at 401 N. Sawyer Road, Kendallville, Indiana 46755.  This facility's NPI number is 1457366189.  The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

48.    Defendant Hancock Regional Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 801 N. State Street, Greenfield, Indiana 46140.  This facility's NPI number is 1467485003.

49.    Defendant The Methodist Hospitals, Inc., is a corporation operating a hospital at 600 Grant Street, Administration Building, Gary, Indiana 46402.  This facility's NPI number is 1467504555.  The Registered Agent for service of process to this defendant is Mr. Raymond Grady, 600 Grant Street, Gary, Indiana 46402.

50.    Defendant Elkhart General Hospital, Inc., is a corporation operating a hospital at 600 East Blvd., Elkhart, Indiana 46514.  This facility's NPI number is 1477551489.  The Registered Agent for service of process to this defendant is Mr. Philip A. Newbold, 600 East Blvd., Elkhart, Indiana 46514.

51.    Defendant Rush Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1300 N. Main Street, Rushville, Indiana 46173.  This facility's NPI number is 1497726020.

52.    Defendant Baptist Healthcare System, Inc. operates a hospital known as "Floyd Memorial" operating at 1850 State Street, New Albany, Indiana 47150.  This facility's NPI number is 1497798847.  The Registered Agent for service of process to this defendant is CT Corporation System, 150 W. Market Street, Suite 800, Indianapolis, Indiana 46204.

53.     Defendant Fayette Memorial Hospital Association, Inc., is a corporation operating a hospital at 1941 Virginian Avenue, Connersville, Indiana 47331.  This facility's NPI number is 1508825720.  The Registered Agent for service of process to this defendant is Mr. Randall White, 1841 Virginia Avenue, Connersville, Indiana 47331.

54.     Defendant Dupont Hospital, LLC, is a corporation operating a hospital at 2520 E. Dupont Road, Fort Wayne, Indiana 46825.  This facility's NPI number is 1538110556.  The Registered Agent for service of process to this defendant is Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana 46204.

55.     Defendant Indiana University Health Bedford, Inc., is a corporation operating a hospital at 2900 W. 16th, Bedford, Indiana 47421.  This facility's NPI number is 1548260284.  The Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

56.     Defendant Margaret Mary Community Hospital, Inc., is a corporation operating a hospital at 321 Mitchell Avenue, Batesville, Indiana 47006.  This facility's NPI number is 1558368449.  The Registered Agent for service of process to this defendant is Mr. George Junker, II, 321 Mitchell Avenue, Batesville, Indiana 47006.

57.     Defendant St. Mary Medical Center, Inc., is a corporation operating a hospital at 1500 S. Lake Park Avenue, Hobart, Indiana 46342.  This facility's NPI number is 1558463745.  The Registered Agent for service of process to this defendant is Ms. Janice Ryba, 1500 S. Lake Park Avenue, Hobart, Indiana 46342.

58.     Defendant The Health and Hospital Corporation of Marion County, is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana,

operating a hospital at 720 Eskenazi Avenue, Indianapolis, Indiana 46202.  This facility's NPI number is 1568407310.

59.    Defendant Community Hospital of Bremen, Inc., is a corporation operating a hospital at 1020 High Road, Bremen, Indiana 46506.  This facility's NPI number is 1568417004.  The Registered Agent for service of process to this defendant is Ms. Carol Hochstetler, 121 N. Marshall Street, Bremen, Indiana 46506.

60.    Defendant Orthopaedic Hospital at Parkview North, LLC, is a limited liability company operating a hospital at 11130 Parkview Circle Drive, Fort Wayne, Indiana 46845.  This facility's NPI number is 1568664613.  The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

61.    Defendant Indianapolis Osteopathic Hospital, Inc., is a corporation operating a hospital at 3630 Guion Road, Indianapolis, Indiana 46222.  This facility's NPI number is 1609873124.  The Registered Agent for service of process to this defendant is Ms. Karen Ann P. Lloyd, 7330 Shadeland Station, Suite 200, Indianapolis, Indiana 46256.

62.    Defendant St. Vincent Carmel Hospital, Inc., is a corporation operating a hospital at 13500 N. Meridian Street, Carmel, Indiana 46032.  This facility's NPI number is 1639124134.  The Registered Agent for service of process to this defendant is Mr. Stephan C. Masoncup, 10330 N. Meridian Street, Suite 401, Indianapolis, Indiana 46290.

63.    Defendant St. Vincent Anderson Regional Hospital, Inc., is a corporation operating a hospital at 2015 Jackson Street, Anderson, Indiana 46016.  This facility's NPI number is 1679578850.  The Registered Agent for service of process to this defendant is Mr. Stephan C. Masoncup, 10330 N. Meridian Street, Suite 401, Indianapolis, Indiana 46290.

64.     Defendant Community Hospital of LaGrange County, Inc., is a corporation operating a hospital at 207 N. Townline Road, LaGrange, Indiana 46761. This facility's NPI number is 1679674956. The Registered Agent for service of process to this defendant is Mr. David Storey, 10501 Corporate Drive, Fort Wayne, Indiana 46845.

65.     Defendant Adams County Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1100 Mercer Avenue, Decatur, Indiana 46733. This facility's NPI number is 1689696148.

66.     Defendant St. Catherine Hospital, Inc., is a corporation operating a hospital at 4321 Fir Street, East Chicago, Indiana 46312. This facility's NPI number is 1689776882. The Registered Agent for service of process to this defendant is Ms. Joann Birdzell, 4321 Fir Street, East Chicago, Indiana 46312.

67.     Defendant Jackson County Schneck Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 411 W. Tipton Street, Seymour, Indiana 47274. This facility's NPI number is 1699738088.

68.     Defendant Perry County Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 8885 ST 237, Tell City, Indiana 47586. This facility's NPI number is 1699779017.

69.     Defendant Indiana University Health White Memorial Hospital, Inc, is a corporation operating a hospital at 720 S. 6th Street, Monticello, Indiana 47960. This facility's NPI number is 1710983945. The Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 W. 10th Street, Fairbanks Hall, Suite 6100, Indianapolis, Indiana 46202.

70.     Defendant Marion General Hospital, Inc., is a corporation operating a hospital at 441 N. Wabash Avenue, Marion, Indiana 46952.  This facility's NPI number is 1770679201.  The Registered Agent for service of process to this defendant is Mr. Paul L. Usher, 441 N. Wabash Avenue, Marion, Indiana 46952.

71.     Defendant Daviess County Hospital is a corporation operating a hospital at 1314 E. Walnut Street, Washington, Indiana 47501.  This facility's NPI number is 1861465999.  The Registered Agent for service of process to this defendant is Ms. Catherine Keck, 1314 E. Walnut Street, Washington, Indiana 47501.

72.     Defendant Indiana University Health Starke Hospital, LLC, is a limited liability company operating a hospital at 102 E. Culver Road, Knox, Indiana 46534.  This facility's NPI number is 1902033582. Its Registered Agent for service of process is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

73.     Defendant Community Howard Regional Health, Inc., is a corporation operating a hospital at 3500 S. Lafountain Street, Kokomo, Indiana 46902.  This facility's NPI number is 1902878994.  The Registered Agent for service of process to this defendant is Mr. Joseph T. Hooper, 3500 S. Lafountain Street, Kokomo, Indiana 46902.

74.     Defendant Dekalb Memorial Hospital, Inc., is a corporation operating a hospital at 1316 E. 7th Street, Auburn, Indiana 46706.  This facility's NPI number is 1902897937.  The Registered Agent for service of process to this defendant is Mr. James P. McCanna, 1320 S. Grandstaff Drive, Auburn, Indiana 46706.

75.     Defendant Putnam County Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 1542 S. Bloomington Street, Greencastle, Indiana 46135.  This facility's NPI number is 1912947490.

76.     Defendant Indiana University Health Paoli, Inc., is a corporation operating a hospital at 642 W. Hospital Road, Paoli, Indiana 47454.  This facility's NPI number is 1912984451.  The Registered Agent for service of process to this defendant is Ms. Mary Beth Claus, 340 W. 10th Street, Suite 6100, Indianapolis, Indiana 46202.

77.     Defendant Decatur County Memorial Hospital is an entity organized pursuant to Ind. Code § 16-22-8-6 by a municipality or political subdivision of Indiana, operating a hospital at 720 N. Lincoln Street, Greensburg, Indiana 47240.  This facility's NPI number is 1952300477.


## IV.  General Allegations

**A.     The HITECH Act and the EHR Incentive Program**.

78.     On February 17, 2009, the American Recovery and Reinvestment Act of 2009 (ARRA) was enacted into law.  ARRA, Pub. L. 111-5, February 17, 2009, 123 Stat. 115 (2009).  Under the ARRA, Division B's Title IV amended two titles of the Social Security Act by establishing an incentive payment program through  grants that sought to promote the adoption and meaningful use of health information technology (HIT) and qualified electronic health records (EHRs).  These provisions under the law, along with Title XIII of Division A of the ARRA, are cited to as the "Health Information Technology for Economic and Clinical Health Act" or the "HITECH Act."

79.     The purpose of the HITECH Act was to create an incentive program to be operated by the Department of Health and Human Services, known as the Electronic Health Records Incentive Program ("EHR Program").  This program sought to provide incentives and grant funding to promote the acceleration and adoption of HIT and the use of EHRs by hospitals, doctors, and

research organizations.  The laws as adopted relating to HIT can be found generally at 42 U.S.C. § 17901 *et seq.*

80.     Most relevant for the purposes of this Complaint, the HITECH Act provides certain patient rights and restrictions on provider use, disclosures, and sales of health information. 42 U.S.C. § 17935.  This portion of the law commands that providers such as hospitals and their business associates "shall not directly or indirectly receive remuneration" for the sale of electronic health records except in limited situations. 42 U.S.C. § 17935(d).  It also provides that individuals "shall have a right to obtain" electronic health records in an electronic format, and to direct the delivery of such electronic records to other entities or persons. 42 U.S.C. § 17935(e)(1).  Lastly, it also mandates that charges by hospitals for the provision of this electronic health record "shall not be greater than the entity's labor costs" in responding to a patient's request. 42 U.S.C. § 17935(e)(2).

81.     The EHR Program provided grant funding for hospitals and other medical providers who could show "meaningful use" of HIT and EHR technology.  The details of the EHR Program were established through rule making, and following public comment, a final rule was published on July 28, 2010, beginning at 75 F.R. 44313.  Various standards to be utilized were adopted and held under 42 C.F.R. § 495 *et seq.*  To show "meaningful use" of the technology, hospitals were required to prove compliance with various reporting criteria, located generally at 42 C.F.R. § 495.6.

82.     The EHR Program was set to launch in three stages, with Stage 1 expected to run from approximately October 1, 2010 through to September 30, 2013.  In order to qualify for grant funding under this voluntary program, hospitals were required to report their compliance with the criteria identified at 42 C.F.R. § 495.6.  This included fourteen "core criteria" objectives. 42 C.F.R. § 495.6(b).  Failing to meet any of those compliance objectives would result in a failure to show "meaningful use" under the EHR Program, making a hospital ineligible to receive any grant funding.

83.     Throughout Stage 1 of the EHR Program, hospitals were allowed to show compliance and to receive funding by filing yearly Attestation documentation reporting certain figures, including figures relating to compliance with the "core criteria" requirements established at 42 C.F.R. § 495.6(b). In return for filing these Attestation compliance documents, the hospitals would receive lump-sum payouts of grant funding for the year based upon calculations set by the EHR Program.

84.     Of particular relevance to this Complaint, Core Measure No. 11 had an objective of requiring hospitals and other medical providers to provide patients with electronic health records upon their request within three (3) business days of receiving such a request from a patient or their agent. 42 C.F.R. § 495.6(f)(11).

85.     In order to show compliance and to receive grant funding under the EHR Program, hospitals were required to report through Attestation the number of times EHR requests were made, and the number of times that the hospital complied with the provision of those electronic records within three (3) business days. If the hospital achieved a 50% success rate or more in relation to this measure, then this qualified for "meaningful use" and made the hospital eligible to receive public funding. A failure to meet this success rate meant that meaningful use had not been met, disqualifying a hospital from receiving any of the grant funding under the program.

86.     The Attestation paperwork filled out by hospital administrators or staff to receive this funding contained specific warnings and notices that filing false claims, making misrepresentations, or providing false, incomplete, or misleading information under the Attestation process would subject a person to criminal and civil penalties.


**B.      The Relators' Initial Investigation**.

87. Defendants Memorial Hospital of South Bend, Inc., Saint Joseph Regional Medical Center, Inc., Saint Joseph Regional Medical Center – Plymouth Campus, Inc., and St. Vincent Hospital and Health Care Center, Inc., (collectively "the Original Hospital Defendants") operate four hospitals within the State of Indiana.

88. The Relators to this action consist of two attorneys, Michael P. Misch and Bradley P. Colborn, acting on behalf of the law firm of Anderson, Agostino & Keller, P.C. This law firm and its attorneys regularly handle causes of action for personal injuries and medical malpractice. As a natural requirement of this work, the firm, its attorneys, and its clients make routine requests for medical records from medical providers, including the Original Hospital Defendants, and other providers throughout the State of Indiana.

89. In recent years, the Relators and other attorneys in the firm have moved towards specifically requesting the provision of medical records in an electronic format. This process is achieved by having patients sign releases directing hospitals to provide such records to the patient's chosen agent, the law firm and its attorneys, and specifically requesting that the records be provided in an electronic format.

90. As a result of repeated frustrations and delays in obtaining fast, inexpensive access to electronic medical records, Michael P. Misch and Bradley P. Colborn began to research and investigate how to improve their own attempts to assist clients in getting electronic medical records. The original goal of this investigation was merely to streamline and minimize the time, difficulty, and costs utilized in obtaining patient records, as these costs were ultimately passed on to patients.

91. In the course of this investigation, the Relators' experiences in requesting electronic medical records increasingly did not line up with the requirements of laws, rules, and the EHR Program. This led the Relators to track their own experiences with hospitals involved in the EHR

Program, and to exhaustively research what the hospitals were required to do in relation to electronic records.  This investigation uncovered factual inconsistencies in what the Original Hospital Defendants were reporting, and what the firm's own experiences have shown.  Therefore, the Relators have good cause to believe that the Original Hospital Defendants have defrauded the United States of America, the State of Indiana and taxpayers by falsely recording or reporting their compliance with Core Measure No. 11 of the EHR Program.

92.     The Relators continued their investigation by obtaining compiled reporting data for Stage 1 EHR Program Core Measures.  A cross referencing of publicly available data regarding the figures reported by the Original Hospital Defendants with the internal requests and responses connected with the Relators' own experiences confirmed suspicions that the figures reported by the Original Hospital Defendants are false.  While the reported data was publicly available and within the possession of the  government, the Relators are the original source of the information showing that these reported figures are false.

93.     Defendant Memorial Hospital of South Bend, Inc., reported Core Measure No. 11 figures claiming that it received four (4) requests for electronic medical records in 2012, and four (4) times it provided the electronic medical records within three business days.  For 2013, it claimed that these figures were sixteen (16) requests and sixteen (16) full compliances. The Attestation for 2012 was made on April 16, 2012, and the Attestation for 2013 was made on October 31, 2013.

94.     On five occasions between April and December of 2013 alone, the Relators issued electronic medical records requests to Defendant Memorial Hospital of South Bend, Inc., while acting as an agent for patients. These requests were issued on: April 17, 2013; June 13, 2013; October 25, 2013; November 4, 2013; and December 20, 2013. Memorial Hospital of South Bend, Inc., however, only provided medical records in an electronic format once out of the five requested

times, and even then, it failed to provide those records within three (3) business days of that particular request.  Therefore, Memorial Hospital of South Bend, Inc.'s claim that, in 2013, it received sixteen (16) electronic medical records requests and provided electronic medical records within three (3) business days for all sixteen (16) requests constitutes a false claim.

95.     Defendant Saint Joseph Regional Medical Center, Inc., reported that the St. Joseph Mishawaka Medical Center's Core Measure No. 11 compliance figures were three for three (3/3), four for four (4/4), and one for one (1/1) for the years of 2011, 2012 and 2013, respectively. Attestations were made on July 14, 2011, November 15, 2012, and October 17, 2013, respectively.

96.     In April of 2013, the Relators issued an electronic medical records request to St. Joseph Mishawaka Medical Center, while acting as an agent for a patient. The request was issued on April 22, 2013. The St. Joseph Mishawaka Medical Center, however, did not provide the requested medical records within three (3) days of the request, and, more importantly, it did not provide the medical records in an electronic format as requested.  Therefore, St. Joseph Mishawaka Medical Center made a false claim when it reported in 2013 that it only received one (1) request for electronic medical records in 2013 and that it properly responded to that request by providing the requested electronic medical records within three (3) business days of the request.

97.     Saint Joseph Regional Medical Center, Inc., or its corporate subsidiary Saint Joseph Regional Medical Center – Plymouth Campus, Inc., reported that the St. Joseph Plymouth Medical Center reported Core Measure No. 11 compliance figures of one for one (1/1), zero for zero (0/0), and zero for zero (0/0) for 2011, 2012 and 2013, respectively. The Attestations were made on July 14, 2011, November 15, 2012, and October 17, 2013, respectively, the same as the dates listed in Paragraph 95.

98.     In October of 2013, the Relators issued an electronic medical records request to St. Joseph Plymouth Medical Center, while acting as an agent for a patient. The request was issued October 2, 2013. The St. Joseph Plymouth Medical Center, however, did not provide the requested medical records within three (3) days of the request, and, more importantly, it did not provide the medical records in an electronic format as requested. Therefore, the St. Joseph Plymouth Medical Center made a false claim when it reported in 2013 that it had zero requests for electronic health records.

99.     St. Vincent Hospital and Health Care Center, Inc., reported Core Measure No. 11 compliance figures showing that it had never received a single request for electronic medical records. The 2012 Attestation was made on October 16, 2012, and the 2013 Attestation was made on November 15, 2013.

100.     In August of 2013, the Relators issued an electronic medical records request to St. Vincent Hospital and Health Care Center, Inc., while acting as an agent for a patient. The request was issued on August 5, 2013. St. Vincent Hospital and Health Care Center, Inc., however, did not provide the requested medical records within three (3) days of the request, and, more importantly, it did not provide the medical records in an electronic format as requested. Therefore, St. Vincent Hospital and Health Care Center, Inc., made a false claim when it reported in 2013 that it had zero requests for requests for electronic health records.

101.     The Original Hospital Defendants have submitted false claims for payment of public funding from the government through the Medicare EHR Program, as well as through the State of Indiana for EHR Program funds distributed to the state through its Medicaid Program.

102.     During Stage 1, Memorial Hospital of South Bend, Inc., illegally and fraudulently claimed and received $5,352,369.93 in payments from the Medicare portion of the EHR Program,

-22-

and $3,053,320.42 through the Medicaid portion.  Therefore, Memorial Hospital of South Bend, Inc., received payments from the United States of America totaling $8,405,690.35 from the EHR Program within the three-year period for Stage 1.

103.    During Stage 1, Saint Joseph Regional Medical Center, Inc., for its St. Joseph Mishawaka Medical Center, illegally and fraudulently claimed and received $6,049,589.05 in payments from the Medicare portion of the EHR Program, and $2,196,361.18 through the Medicaid portion.  Therefore, for its St. Joseph Mishawaka Medical Center, St. Joseph Regional Medical Center, Inc., received payments totaling $8,245,950.23 from the United States of American under the EHR Program within the three-year period for Stage 1.

104.    During Stage 1, Saint Joseph Regional Medical Center, Inc., or its corporate subsidiary Saint Joseph Regional Medical Center – Plymouth Campus, Inc., for its Saint Joseph Plymouth Medical Center, illegally and fraudulently claimed and received $3,032,843.74 in payments from the Medicare portion of the EHR Program, and $896,028.92 through the Medicaid portion.  Therefore, for its Saint Joseph Plymouth Medical Center facility, Saint Joseph Regional Medical Center, Inc., or its corporate subsidiary Saint Joseph Regional Medical Center – Plymouth Campus, Inc., received payments totaling $3,928,872.66 from the United States of America under the EHR Program within the three-year period for Stage 1.

105.    During Stage 1, St. Vincent Hospital and Health Care Center, Inc., illegally and fraudulently claimed and received $4,758,791.02 in payments from the Medicare portion of the EHR Program, and $3,775,193.12 through the Medicaid portion.  Therefore, St. Vincent Hospital and Health Care Center, Inc., obtained payments totaling $8,533,984.14 from the United States of America under the EHR Program within the three-year period for Stage 1.

106.    In total, the Original Hospital Defendants have illegally and falsely defrauded the United States of America and its citizens for a total amount of $29,114,497.38 in grant funding from the Medicare and Medicaid portions of the EHR Program during Stage 1.

C.    **CIOX Health, LLC (A Release of Information Provider) Has Profited from Non-Compliance with the Requirements of the EHR Program**.

107.    For each instance where the Relators requested electronic medical records as specified in Paragraphs 91 through 100 of this First Amended Complaint, CIOX Health, LLC ("CIOX"), as agent/business associate for the hospitals, handled the provision and billing for the medical records the Relators sought to obtain in electronic format.

108.    CIOX is the largest Release of Information ("ROI") provider of medical records in the United States, and it specializes in assisting hospitals and healthcare providers with the storage and release of records to patients in compliance with  and state laws.

109.    Each and every time CIOX provided medical records in response to the requests the Relators have identified in Paragraphs 91 through 100, the medical records were not provided to the Relators within the required three-day time frame, and only once were they provided in electronic format as requested.

110.    Each and every time CIOX issued billing invoices to the Relators for providing medical records the Relators requested, it was for an amount that exceeded the labor costs of compliance, often seeking hundreds of dollars for the provision of medical records.[1]

---

[1] In comparison, present Health and Human Services guidance on its website has clarified that a $6.50 flat fee for labor is an appropriate measure for using a flat fee, and that providers cannot simply rely upon per page regulations to illegally inflate charges for this information. See a lengthy and detailed FAQ available for providers and professions at the following address: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

111.    On the information and belief of the Relators, CIOX has engaged in a pattern or practice to directly or indirectly seek remuneration for the illegal over-billing and sale of medical records at the expense of the Original Hospital Defendants' patients.

112.    CIOX acted as a business associate for the Original Hospital Defendants for the purposes of compliance with federally mandated rules relating to the provision and sale of medical records.

113.    CIOX participated in the act of providing and/or causing to be provided a series of false claims to the United States of America by the Original Hospital Defendants.  As part of this participation, CIOX routinely and repeatedly engaged in a practice, policy and/or scheme to illegally and fraudulently over-bill patients for the provision of medical records.  This behavior and participation in conjunction with the provision of services to the Original Hospital Defendants had the goal and intent of directly and/or indirectly seeking remuneration for the illegal overcharging and illegal sale of medical records for profit at the expense of patients.


**D.    Subsequent Investigation of Statistically Correlated Defendants**.

114.    As the Relators have continued to investigate and correlate data relating to this case, they have discovered that there appears to a stark statistical trend that indicates that the exact same type of fraudulent reporting of Core Measure No. 11 figures is widespread throughout many Indiana hospitals.

115.    Listed in Paragraphs 12 through 77 of this First Amended Complaint are additional defendants operating sixty-six (66) hospitals in the State of Indiana that are collectively referred to in this First Amended Complaint as the "Statistically Correlated Defendants."  Each of these hospitals have reported Core Measure No. 11 compliance data indicating that the *exact* same

fraudulent reporting of Core Measure No. 11 figures that is alleged against the Original Hospital Defendants is taking place at the hospitals operated by the Statistically Correlated Defendants.

116.    The difference between the Original Hospital Defendants and the Statistically Correlated Defendants is that the Relators have not issued electronic records requests to the Statistically Correlated Defendants' hospitals during the applicable periods of compliance reporting time frames.

117.    Applicable law supports the addition of the Statistically Correlated Defendants to this lawsuit consistent with the requirements of Fed. R. Civ. P. 9(b).  Suspicion by the Relators is not enough to satisfy Rule 9(b), but citing to data and providing detail which places the data into context within a pleading allows such suspicions to be plausible. *See Pirelli Armstrong Tire Corp., Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443-47 (7th Cir. 2011).  A plaintiff that has limited information may be allowed to maintain claims upon information and belief when the facts constituting the fraud are not accessible to the plaintiff, the plaintiff provides the grounds for such suspicions, and the plaintiff provides firsthand information or examples which place the information into context. *Id.*

118.    A host of federal cases involving the False Claims Act have supported the application of the rules identified in the preceding paragraph as long as the Relators can cite sufficient detail to provide context, specific examples, and a description of the information possessed by the defendants. *See*, *generally, U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 501 F.3d 493, 504 (6th Cir. 2007); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1170 (10th Cir. 2010); *U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.*, 895 F.Supp.2d 872, 879 (N.D. Ill. 2012); *U.S. ex rel. Garbe v. Kmart Corporation*, 968 F.Supp.2d 978, 984 (S.D. Ill 2013); *U.S. ex rel. Lisitza v. Par Pharmaceutical Companies, Inc.*, Medicare & Medicaid P 304368, 2013 WL

870623 (N.D. Ill. 2013); *U.S. v. Indianapolis Neurosurgical Group, Inc.*, Medicare & Medicaid P 304341, 2013 WL 652538 (S.D. Ind. 2013).

119.    The Plaintiff/Relators have already stated specific examples for false claims attestations in relation to the Original Hospital Defendants, and they allege that the practice of falsely reporting or ignoring the reporting requirements of Core Measure No. 11 are widespread within the State of Indiana's hospitals based upon the context of the reported compliance data.

120.    Additionally, the Plaintiff/Relators specifically allege that the information necessary to prove that the Statistically Correlated Defendants are making false claims is within the exclusive knowledge and/or possession of said Statistically Correlated Defendants. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994); *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

121.    While the Plaintiff/Relators know what was attested to, on whose behalf, and when it was attested to, only the Statistically Correlated Defendants have possession of documentary evidence which would show what individuals certified this information on behalf of the hospitals. The Statistically Correlated Defendants or their ROI providers are also the only parties in possession of the documents to show exactly how many times patients actually requested electronic medical records, and how many times the hospital provided such information within three (3) business days. Plaintiff/Relators know this because part of the Attestation form paperwork required to receive any funding under the EHR Program includes an agreement that the provider would keep records "as are necessary to demonstrate that I met all Medicare EHR Incentive Program requirements[.]"[2]

---

[2] A copy of the EHR Incentive Program Attestation User Guide For Eligible Hospitals and Critical Access Hospitals is available as of the time of the filing of this Amended Complaint. For ease of reference, a digital copy and the language referenced may be found on p. 47 of a 55 page pdf located at: https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms/Downloads/HospAttestationUserGuide.pdf

122.    It is presently unknown how many of the Statistically Correlated Defendants utilized a ROI provider such as CIOX.  However, such a detail is only important for purposes of additional or derivative claims of liability.  Hospitals are allowed to outsource compliance to "business associates" such as CIOX (*see* 45 C.F.R. § 160.103), but providers remain civilly liable for the acts of their business associates, or any of their subcontractors, employees, or agents (*see* 45 C.F.R. § 160.402(c)).

**E.     Placing the Reported Compliance Data of the Statistically Correlated Defendants Into Context**.

123.    Based on their own experiences, the Relators and the law firm commonly issue several, if not dozens, of requests for electronic medical records every week.

124.    Even a cursory review of the compliance figures reported by hospitals throughout Indiana shows that in any given year under the program, many hospitals received dozens if not hundreds of requests from patients or their agents for electronic medical records.

125.    This compliance data should be easy to track because any electronic health records system under the EHR Program must have the ability to track this information.

126.    There are many examples of reported Core Measure No. 11 compliance with numerous requests for electronic medical records, shown by a sampling of reports made by the following hospitals:

    a.    In 2013, Hendricks County Hospital in Danville, Indiana, reported that they complied forty-three (43) times for forty-three (43) requests for electronic medical records.

    b.    In 2012 and 2013, Indiana University Health Morgan Hospital in Martinsville, Indiana reported compliance figures of 93/93 and 119/121, respectively.

      c.      In 2012 and 2013, Goshen Hospital in Goshen, Indiana reported compliance figures of 100/100 and 289/290, respectively.

      d.      In 2013, Community Hospital of Anderson & Madison County in Anderson, Indiana reported compliance figures of 131/131.

127.     Similarly, other hospitals throughout the country have tracked and reported large numbers of requests for electronic medical records, as shown by the following representative examples:

      a.      From 2011 through 2013, Naples Community Hospital Inc. in Naples, Florida reported compliance figures of 239/239, 587/587, and 276/276, respectively.

      b.      From 2011 through 2013, Bon Secours St. Mary's Hospital of Richmond, Inc. located in Richmond, Virginia, reported compliance figures of 73/73, 651/651, and 603/603, respectively.

      c.      In 2012 and 2013, The New York and Presbyterian Hospital in Midtown Manhattan in New York, New York reported compliance figures of 698/698, and 3,272/3,272, respectively.

      d.      From 2011 through 2013, West Virginian University Hospitals, Inc., in Morgantown, West Virginia reported compliance figures of 33/37, 206/264, and 212/351, respectively.

      e.      From 2011 through 2013, Citizens Memorial Hospital District in Bolivar, Missouri reported compliance figures of 135/150, 395/399, and 461/484, respectively.

      f.      From 2011 through 2013, Carilion Medical Center in Roanoke, Virginia reported compliance figures of 61/61, 362/362, and 472/472.

      g.      From 2011 through 2013, Mercy Kansas Communities Inc. in Independence, Kansas reported compliance figures of 278/300, 986/1,069, and 1,052/1,119, respectively.

128.     EHR Program reporting data shows that many hospitals in Indiana and throughout the country were receiving literally *hundreds* of requests for electronic medical records during the applicable years.

129.    When the Relators compared this data against the reported compliance data from the Original Hospital Defendants, it became readily noticeable that these hospitals were only reporting zeroes, single digits, or other smaller numbers.  Because the Relators knew these reported numbers for the Original Hospital Defendants were false, they began to suspect that there was a wide pattern of hospitals in the area that either falsely claimed they received zero (0) requests for electronic medical records, or simply tracked a small enough representative example of single digit compliance to hit the fifty percent (50%) compliance mark required by the EHR Program.  "Cutting corners" in such a manner would represent a fraudulent course of action that would save hospitals the time of bothering to track their compliance, while still ensuring easy access to grant funding.

130.    In comparison with the hundreds of requests reported by other hospitals, the Statistically Correlated Defendants submitted reports under the EHR Program where they claim to have received zero (0) requests for electronic medical records (claiming to be exempt), or otherwise provided reporting numbers in the single or lower numeral digits that just happened to hit the fifty percent (50%) mark needed to get millions in grant funding.

131.    Defendant Huntington Memorial Hospital, Inc., reported compliance figures of 0/0 and 4/4 in 2012 and 2013, respectively. The Attestations were made on June 22, 2012, and November 27, 2013, respectively.

132.    Defendant St. Joseph Health System, LLC, reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013. The Attestations were made on October 25, 2011, October 31, 2012, and October 28, 2013, respectively.

133.    Defendant Terre Haute Regional Hospital, L.P., reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013. The Attestations were made on October 27, 2011, November 1, 2012, and November 12, 2013, respectively.

134.    Defendant Columbus Regional Hospital reported compliance figures of 1/1 in 2013. The Attestation was made on May 2, 2013.

135.    Defendant RHN Clark Memorial Hospital, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on October 8, 2012, and October 30, 2013, respectively.

136.    Defendant Indiana University Health Inc. reported compliance figures of 2/2 in 2012, and then reported suddenly seeing an increase to 355/363 the following year in 2013. The Attestations were made on January 18, 2012, and November 22, 2013, respectively.

137.    Defendant Warsaw Health System, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on October 25, 2012, and October 22, 2013, respectively.

138.    Defendant Major Hospital reported compliance figures of 0/0, 0/0, and 0/0 for 2011 through 2013. The Attestations were made on September 26, 2011, October 11, 2012, and October 15, 2013, respectively.

139.    Defendant Lutheran Musculoskeletal Center, LLC, reported no figures while claiming an exemption in 2012, and 0/0 for 2013. The Attestations were made on January 16, 2012, and October 16, 2013, respectively.

140.    Defendant Whitley Memorial Hospital, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively. The Attestations were made on June 25, 2012, and November 27, 2013, respectively.

141.    Defendant Indiana University Health Bloomington, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on July 10, 2012, and on November 12, 2013, respectively.

142.    Defendant Porter Hospital, LLC, reported compliance figures of 0/0 for 2013. The Attestation was made on November 7, 2013.

143.    Defendant Good Samaritan Hospital reported compliance figures of 1/1 and 3/4 in 2012 and 2013, respectively. The Attestations were made on October 23, 2012, and on November 19, 2013, respectively.

144.    Defendant Indiana University Health Ball Memorial Hospital, Inc., reported no compliance figures in 2012 while claiming an exemption, but the number suddenly rose to 260/260 in 2013. The Attestations were made on January 27, 2012, and on November 15, 2013, respectively.

145.    Defendant Parkview Wabash Hospital, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively. The Attestations were made on November 20, 2012, and on November 21, 2013, respectively.

146.    Defendant Woodlawn Hospital, Inc., reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively. The Attestations were made on March 29, 2012, and November 22, 2013, respectively.

147.    Defendant Union Hospital, Inc.'s Clinton, Indiana facility reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively. The Attestations were made on November 21, 2012, and on October 28, 2013, respectively.

148.    Union Hospital, Inc.'s Terre Haute, Indiana facility reported compliance figures of 0/0 and 0/0 in two separate times for 2013.[3] The Attestations were made on October 15, 2013, and October 24, 2013, respectively.

---

[3]The government's compiled data entered for this facility shows an Attestation of 0/0 on October 15, 2013, and another entry of 0/0 on October 24, 2013.  It is not clear if the data was resubmitted, duplicated or intended to be entered for another year such as 2011 or 2012.

149.     Defendant IOM Health System, LP, reported compliance figures of 0/0, 0/0, and 0/0 for years 2011 through 2013. The Attestations were made on October 25, 2011, October 31, 2012, and October 24, 2013, respectively.

150.     Defendant Franciscan Alliance, Inc.'s Hammond, Indiana facility reported compliance figures of 0/0 and 6/6 for years 2012 and 2013, respectively. The Attestations were made on October 19, 2012, and on November 26, 2013, respectively.

151.     Defendant Franciscan Alliance, Inc.'s Crown Point, Indiana facility reported compliance figures of 0/0 for 2013. The Attestation was made on January 11, 2013.

152.     Defendant Franciscan Alliance, Inc.'s Indianapolis, Indiana facility reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on February 17, 2012, and November 19, 2013, respectively.

153.     Defendant Franciscan Alliance, Inc.'s Lafayette, Indiana facility reported compliance figures of 2/2 in 2013. The Attestation was made on November 5, 2013.

154.     Defendant Franciscan Alliance, Inc.'s Crawfordsville, Indiana facility reported compliance figures of 0/0 for 2013. The Attestation was made on November 5, 2013.

155.     Defendant Franciscan Alliance, Inc.'s Mooresville, Indiana facility reported compliance figures of 0/0, 0/0, and 10/10 from 2011 through 2013. The Attestations were made on November 29, 2011, November 20, 2012, and November 19, 2013, respectively.

156.     Defendant Franciscan Alliance, Inc.'s Michigan City, Indiana facility reported compliance figures of 0/0 in 2013. The Attestation was made on January 11, 2013.

157.     Defendant Franciscan Alliance, Inc.'s Dyer, Indiana facility reported compliance figures of 0/0, and 20/20 in 2012 and 2013, respectively. The Attestations were made on October 19, 2012, and November 26, 2013, respectively.

158.    Defendant Pulaski Memorial Hospital reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively. The Attestations were made on September 4, 2012, and November 1, 2013.

159.    Defendant Dearborn County Hospital reported compliance figures of 2/3 and 0/0 in 2012 and 2013, respectively. The Attestations were made on November 14, 2012, and November 18, 2013, respectively.

160.    Defendant Indiana University Health Arnett, Inc., reported no compliance figures claiming an exemption in 2012, and claimed figures of 10/10 for 2013. The Attestations were made on January 27, 2012, and on November 15, 2013, respectively.

161.    Defendant Johnson Memorial Hospital reported no compliance figures for 2012 while claiming an exemption, and claimed figures 2/2 in 2013. The Attestations were made on September 28, 2012, and October 17, 2013, respectively.

162.    Defendant Henry County Memorial Hospital reported compliance figures of 0/0 and 2/2 in 2012 and 2013, respectively. The Attestations were made on October 19, 2012, and on November 22, 2013, respectively.

163.    Defendant Parkview Hospital, Inc., reported compliance figures of 0/0 for 2012, suddenly jumping up to 437/438 in 2013. The Attestations were made on July 5, 2012, and November 27, 2013, respectively.

164.    Defendant Bluffton Health System, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on October 25, 2012, and October 14, 2013, respectively.

165.    Defendant Cameron Memorial Community Hospital, Inc., reported compliance figures of 0/0 and 0/0 for 2012 and 2013, respectively. The Attestations were made on May 15, 2012, and November 14, 2013, respectively.

166.    Defendant Community Hospital of Noble County, Inc., reported compliance figures of 0/0 and 8/8 in 2012 and 2013, respectively. The Attestations were made on June 22, 2012, and November 27, 2013, respectively.

167.    Defendant Hancock Regional Hospital reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively. The Attestations were made on September 12, 2012, and November 19, 2013, respectively.

168.    Defendant The Methodist Hospitals, Inc., reported compliance figures of 4/5, 2/2, and 10/10 from 2011 through 2013. The Attestations were made on October 24, 2011, October 17, 2012, and November 1, 2013, respectively.

169.    Defendant Elkhart General Hospital, Inc., reported compliance figures of 4/4 in 2013. The Attestation was made on November 11, 2013.

170.    Defendant Rush Memorial Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on May 17, 2012, and November 21, 2013, respectively.

171.    Defendant Baptist Healthcare System, Inc., reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively. The Attestations were made on September 25, 2012, and October 16, 2013, respectively.

172.    Defendant Fayette Memorial Hospital Association, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively. The Attestations were made on July 3, 2012, and October 28, 2013, respectively.

173.    Defendant Dupont Hospital, LLC, reported compliance figures of 2/3, 3/4, and 0/0 from 2011 through 2013. The Attestations were made on October 25, 2011, October 31, 2012, and October 15, 2013, respectively.

174.    Defendant Indiana University Health Bedford, Inc., reported compliance figures of 2/2 and 0/0 in 2012 and 2013, respectively. The Attestations were made on November 21, 2012, and November 27, 2013, respectively.

175.    Defendant Margaret Mary Community Hospital, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on September 11, 2012, and November 22, 2013, respectively.

176.    Defendant St. Mary Medical Center, Inc., reported compliance figures of 0/0 and 7/9 in 2012 and 2013, respectively. The Attestations were made on October 24, 2012, and November 21, 2013, respectively.

177.    Defendant The Health and Hospital Corporation of Marion County reported compliance figures of 0/0 in 2013. The Attestation was made on November 25, 2013.

178.    Defendant Community Hospital of Bremen, Inc., reported compliance figures of 0/0 in 2013. The Attestation was made on October 9, 2013.

179.    Defendant Orthopaedic Hospital at Parkview North, LLC, reported compliance figures of 0/0 and 15/15 in 2012 and 2013, respectively. The Attestations were made on June 25, 2012, and November 27, 2013, respectively.

180.    Defendant Indianapolis Osteopathic Hospital, Inc., reported compliance figures of 2/2 and 0/0 in 2012 and 2013, respectively. The Attestations were made on May 22, 2012, and November 7, 2013, respectively.

181.    Defendant St. Vincent Carmel Hospital, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on August 17, 2012, and October 31, 2013, respectively.

182.    Defendant St. Vincent Anderson Regional Hospital, Inc., reported compliance figures of 0/0 and 6/6 in 2012 and 2013, respectively. The Attestations were made on October 16, 2012, and November 26, 2013.

183.    Defendant Community Hospital of LaGrange County, Inc., reported compliance figures of 0/0 and 1/1 in 2012 and 2013, respectively. The Attestations were made June 25, 2012, and November 27, 2013, respectively.

184.    Defendant Adams County Memorial Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on October 5, 2012, and November 22, 2013, respectively.

185.    Defendant St. Catherine Hospital, Inc., reported compliance figures of 1/1 and 6/6 in 2012 and 2013, respectively. The Attestations were made on October 24, 2012, and November 4, 2013, respectively.

186.    Defendant Jackson County Schneck Memorial Hospital reported compliance figures of 45/47 and 0/0 in 2012 and 2013, respectively. The Attestations were made on November 28, 2012, and November 25, 2013, respectively.

187.    Defendant Perry County Memorial Hospital reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively. The Attestations were made on September 18, 2012, and November 25, 2013, respectively.

188.    Defendant Indiana University Health White Memorial Hospital, Inc, reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively. The Attestations were made on April 24, 2012, and October 21, 2013, respectively.

189.    Defendant Marion General Hospital, Inc., reported compliance figures of 0/0 in 2013. The Attestation was made on November 21, 2013.

190.    Defendant Daviess County Hospital reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on August 20, 2012, and October 11, 2013, respectively.

191.    Defendant Indiana University Health Starke Hospital, LLC, reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on February 24, 2012, and November 22, 2013, respectively.

192.    Defendant Community Howard Regional Health, Inc., reported compliance figures of 0/0 for 2013. The Attestation was made on July 12, 2013.

193.    Defendant Dekalb Memorial Hospital, Inc., reported compliance figures of 1/1 and 0/0 in 2012 and 2013, respectively. The Attestations were made on May 1, 2012, and October 24, 2013, respectively.

194.    Defendant Putnam County Hospital reported no compliance figures in 2012 while claiming an exemption, and 1/1 for 2013. The Attestations were made on September 28, 2012, and October 16, 2013, respectively.

195.    Defendant Indiana University Health Paoli, Inc., reported compliance figures of 0/0 and 0/0 in 2012 and 2013, respectively. The Attestations were made on July 9, 2012, and November 12, 2013, respectively.

196.     Defendant Decatur County Memorial Hospital reported compliance figures of 1/1 and 1/1 in 2012 and 2013, respectively. The Attestations were made on April 17, 2012, and November 26, 2013, respectively.

197.     In comparison with the compliance numbers reported by various hospitals throughout Indiana and the country, the reported compliance figures from the Statistically Correlated Defendants are highly aberrant and so low as to defy any rational belief in their accuracy, and they suggest widespread and flagrant abuse of the EHR Incentive program throughout Indiana hospitals.

198.     The terms of eligibility for the EHR Incentive Program require that the Original Hospital Defendants and the Statistically Correlated Defendants must mandatorily keep all documentation to establish the veracity of their reported compliance data.  This raw documentation was never turned over to the government, and is solely within the possession of the Original Hospital Defendants and the Statistically Correlated Defendants.

199.     The documentation within the possession of the defendants necessary to prove the fraudulent nature of the reported compliance data can be described with specificity.   The Plaintiff/Relators require (i) copies of documents evidencing requests for production of medical records during the limited, applicable time frame to determine how many of those requests specifically requested the information in an electronic format, and (ii) copies of documents evidencing the date upon which each request was issued or received.

200.     Secondly, the requests for electronic records will need to be reviewed against the dates, formats and billing information for any medical records provided to patients or their agents to determine if the reported compliance data was correct for the number of times the hospital reported electronic records were produced within three (3) business days.

201.    According to federal government records, the Original Hospital Defendants and the Statistically Correlated Defendants have received payments under the EHR Incentive program in a staggering amount.  Combined, these defendant hospitals were paid $228,231,431.05 in grant funding under the Medicare portion of the program, and $96,154,738.27 under the Medicaid portion of the program during the three-year period at issue.  In total, these hospitals have been paid $324,386,169.32 in public funding from the citizens of the United States and the State of Indiana in return for the promise that patients would be provided with fast, cheap, easy access to their electronic health records, and these hospitals have failed to keep that promise.

202.    A failure to properly track and report Core Measure No. 11 means that the defendant hospitals did not achieve "meaningful use" as defined by the legislation and its ensuing rules.  This means that the defendant hospitals were not eligible to receive or keep *any* funding under this program, and by submitting false compliance reports, they have acted in a fraudulent manner that constitutes false claims for public funding.

## V.  CAUSES OF ACTION AGAINST THE ORIGINAL HOSPITAL DEFENDANTS AND CIOX HEALTH, LLC

### Count I – Violation of the False Claims Act

### Presenting Factually False Claims for Payment Pursuant to 31 U.S.C. § 3729(a)(1)(A)

203.    The Original Hospital Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly submitting and/or conspiring to create and submit false statements and claims for the purposes of obtaining money through a  government program.

204.    Under the program at issue, for each year in which the Original Hospitals sought payment of grant funding, they each filed a yearly Attestation to the government. Each Attestation

constitutes a claim for payment pursuant to 31 U.S.C. § 3729(b)(2) as each Attestation was a request for payment under a government program.

205.    Each Attestation required Core Measure 11 reporting that accurately and honestly reported requests for electronic records that were received from patients or their agents during the applicable program year, along with compliance reporting within three (3) days to prove that the hospital used this certified electronic health record functionality for at least fifty percent of those requests.

206.    The Original Hospital Defendants all knowingly reported false information for this measure in order to ensure access to government grant funding. Each Attestation constituted a factually false claim for payment, by presenting: 1) factually false information for Core Measure 11 compliance; and 2) falsely promising that each hospital had achieved and made Meaningful Use of their certified electronic medical record system.

207.    The statutes, regulations, and all interpretive materials created by the government in relation to this grant program make clear that compliance with all Core Measures and the achievement of Meaningful Use were mandatory in order to receive *any* funding under this voluntary program. The factually false information presented in the Attestations to receive payment were material to the payment of grant funding. If the hospitals had reported accurate and true information, they would have been eligible to receive none of the funds they received.

208.    By knowingly presenting factually false claims for payment of grant funding under this program, the Original Hospital Defendants violated the False Claims Act.

209.    Through its associations with the Original Hospital Defendants as its business associate, employee, agent and/or subcontractor handling the provision of medical records to patients, CIOX knowingly assisted in the provision of false reporting figures to the government

despite knowledge of the requirements of Core Measure No. 11. CIOX has conspired with or is otherwise responsible for causing factually false statements to be issued to the government in connection with payments to the Original Hospital Defendants obtained from the EHR Program. By causing factually false information to be submitted to the government by the Original Hospital Defendants, CIOX is similarly liable pursuant to 31 U.S.C. § 3729(a)(1)(A).

210.    The United States of America was unaware of the factual falsity of these claims made by the Original Hospital Defendants. In reliance upon the factual accuracy of the Attestation documents submitted by the Original Hospital Defendants and false proclamations of figures showing that the Original Hospital Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Original Hospital Defendants based on factually false claims.

211.    Without the false claims and false figures they provided to the government, the Original Hospital Defendants would not have been eligible to receive or retain grant funding under the voluntary terms of EHR Program. Congress only authorized the issuance of grant payments from the public fisc for hospitals that made Meaningful Use of certified electronic health records.

212.    That as a result of these actions, the Original Hospital Defendants and CIOX have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Original Hospital Defendants.

**Count II – Violation of the False Claims Act**

**Making or Using a Factually False Record or Material Statement**

**for Payment Pursuant to 31 U.S.C. § 3729(a)(1)(B)**

213.    The Original Hospital Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly making or using a factually false record or statement material to a false or fraudulent claim.

214.    The Original Hospital Defendants had knowledge that in order to be eligible for funding under the EHR Program, they were required to track and report full compliance with various Core Measures in order to determined to have been a Meaningful User of certified electronic health records technology.

215.    The Original Hospital Defendants had knowledge that compliance with Core Measure 11 was mandatory in order to be eligible or receive any funding under the EHR Program.

216.    The Original Hospital Defendants had knowledge that in order to receive funding under the EHR Program, each year they were required to fill out an Attestation record that accurately recorded and reported Core Measure compliance numbers.

217.    The Original Hospital Defendants knowingly made or used factually false records or statements material to false or fraudulent claims pursuant to 31 U.S.C. § 3729(a)(1)(B) by creating and sending Attestation records which contained factually incorrect information in relation to their Core Measures 11 reporting numbers and their status as a Meaningful User of certified electronic health record technology.

218.    The statutes, regulations, and all interpretive materials created by the government in relation to this grant program make clear that compliance with all Core Measures and the achievement of Meaningful Use were mandatory in order to receive *any* funding under this voluntary program. The factually false Attestation records presented by the Original Hospital Defendants to receive payment were material to the payment of grant funding. If the hospitals had

created and used Attestation records that were factually accurate, they would have been eligible to receive none of the funds they received.

219.    By knowingly making or using factually false records for payment of grant funding under this program, the Original Hospital Defendants violated the False Claims Act.

220.    Through its associations with the Original Hospital Defendants as its business associate, employee, agent and/or subcontractor handling the provision of medical records to patients, CIOX knowingly assisted in the provision of false reporting figures that the Original Hospital Defendants relied upon to make or use the factually false Attestation records that were provided to the government. CIOX has conspired with or is otherwise responsible for causing factually false Attestation records to be issued to the government in connection with payments to the Original Hospital Defendants obtained from the EHR Program. By causing factually false records or statements to be submitted to the government by the Original Hospital Defendants, CIOX is similarly liable pursuant to 31 U.S.C. § 3729(a)(1)(B).

221.    The United States of America was unaware of the factual falsity of the Attestation records made by the Original Hospital Defendants.  In reliance upon the factual accuracy of the Attestation documents submitted by the Original Hospital Defendants and false proclamations of figures showing that the Original Hospital Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Original Hospital Defendants based on factually false claims.

222.    Without the false Attestation records and statement they provided to the government, the Original Hospital Defendants would not have been eligible to receive or retain grant funding under the voluntary terms of EHR Program. Congress only authorized the issuance of grant

payments from the public fisc for hospitals that made Meaningful Use of certified electronic health records, and proved such Meaningful Use through Attestation.

223.    That as a result of these actions, the Original Hospital Defendants and CIOX have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Original Hospital Defendants.

**Count III – Violation of the False Claims Act**

**Express False Certification for Payment**

**Pursuant to 31 U.S.C. § 3729(a)(1)(A) and 3729(a)(1)(B)**

224.    The Original Hospital Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly and expressly issuing false certification statements and documents to the United States of America certifying that they were in compliance with the basic eligibility rules mandated for hospitals to receive grant funding under the EHR Program.

225.    False Claims Act case law supports the use of express false-certification theories.

226.    In order to receive any of the funding under the EHR grant program, each year the Original Hospital Defendants were required to complete Attestation paperwork that contained multiple certifications by the hospitals of their compliance with the terms of the EHR Program. In doing so, the hospitals had to report compliance numbers for various mandatory Core Measures in order to certify that the hospital fit the definition of a Meaningful User of certified electronic health record technology.

227.     Further language and forms utilized in the Attestation paperwork certified that the information and figures reported by the Original Hospital Defendants was true and accurate under the pains and penalties of the False Claims Act.

228.     Without achieving, reporting, and certifying to the government numbers which confirmed that the Original Hospital Defendants were Meaningful User who had correctly reported accurate statistics on the Core Measures, the Original Hospital Defendants were ineligible to receive any money under the EHR Program.

229.     That each of the Original Hospital Defendants knowingly and expressly reported false certification documents in order to receive grant funding under the EHR Program, by falsely tracking and certifying their compliance with Core Measure 11, when in fact those numbers were false.

230.     Through its associations with the Original Hospital Defendants as its business associate, employee, agent and/or subcontractor handling the provision of medical records to patients, CIOX knowingly assisted in the provision of false reporting figures that the Original Hospital Defendants relied upon to make or use the factually false Attestation records that were provided to the government. CIOX has conspired with or is otherwise responsible for causing express false-certification Attestation records to be issued to the  government in connection with payments to the Original Hospital Defendants obtained from the EHR Program. By causing express false-certification records or statements  to be submitted to the government by the Original Hospital Defendants, CIOX is similarly liable pursuant to 31 U.S.C. § 3729(a)(1)(B).

231.     The United States of America was unaware of the factual falsity of the Attestation records made by the Original Hospital Defendants.  In reliance upon the factual accuracy of the Attestation documents submitted by the Original Hospital Defendants and false proclamations of

figures showing that the Original Hospital Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Original Hospital Defendants based on factually false claims.

232.    That an express false-certification of compliance with Core Measure 11 was a material misrepresentation under the False Claims Act, as the statutes, regulations, guides, and interpretive materials provided for the EHR Program all mandate compliance with all Core Measures in order to receive grant funding under the program. Congress only authorized grant funding under the EHR Program to hospitals that proved Meaningful Use of certified electronic health record systems. Failure to comply with Core Measure 11 means a failure to show Meaningful Use, meaning the hospitals would be ineligible to receive any funds under the EHR Program.

233.    By creating and using false-certification documents and statements to receive EHR grant funding when the Original Hospital Defendants were not actually Meaningful Users, the Original Hospital Defendants have defrauded the United States of America of all funds they have received as a result of the false-certifications.

234.    That as a result of these actions, the Original Hospital Defendants and CIOX have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Original Hospital Defendants.

**Count IV – Violation of the False Claims Act**

**Vicarious Liability for Employees and Agents**

-47-

235.    The Original Hospital Defendants all have vicarious liability for their employees, agents, business associates, and subcontractors, to the extent that those individuals or businesses caused the Original Hospital Defendants to issue false claims under Counts I through IV of this action.

236.    To the extent that any other release of information providers other than CIOX caused or contributed to causing the Original Hospital Defendants to submit false claims and false information under the EHR Program, the Original Hospital Defendants remain vicariously liable for the actions of such parties.

237.    To the extent that any certified electronic health record technology firm provided the Original Hospital Defendants with technology that caused them to falsely track their compliance numbers in a fashion that caused the Original Hospital Defendants to create and issue false claims for payment, the Original Hospital Defendants remain vicariously liable for the actions of such parties.

238.    That the ultimate responsibility for truthfully tracking and reporting Core Measure 11 compliance information to the government under the EHR Program remained with the Original Hospital Defendants, who remain liable for the actions of any employees, agents, business associates, or subcontractors to the extent that they may have caused the Original Hospital Defendants to issue false claims for payment under the EHR Program.


**Count V – Violation of the Anti-Kickback Statute**

239.    The Original Hospital Defendants, through their business associations, are jointly and severally liable for the conduct of their business associate, CIOX.

240.    The Original Hospital Defendants and CIOX did more than simply defraud the United States of America by taking grant funding that they were not eligible to receive or keep. Not only did they fail to provide patients with the fast, cheap access to electronic records that was a requirement of receiving the grant funding at issue; they then sought to additionally profit by knowingly over-billing for the production of those medical records by charging patients hundreds of dollars rather than the reasonable remuneration allowed under the HITECH Act.

241.    As part of the business relationship between the Original Hospital Defendants and CIOX, these defendants knowingly engaged in a scheme through which they illegally sought and received direct and/or indirect remuneration for the illegal sale of medical records to patients in violation of their rights under the HITECH Act.  By failing to comply with the HITECH Act, the Original Hospital Defendants and CIOX were able to bill substantially larger amounts for the production of the same materials that could have simply been placed upon a disc or flash drive as intended by the HITECH Act.

242.    As part of this business relationship, the Original Hospital Defendants and CIOX illegally obtained grant funding from the EHR Program to cover the costs of providing electronic medical records to patients, while also seeking to directly and/or indirectly receive remuneration for profit from patients at the expense of the citizens of the United States of America.

243.    The conduct of the defendants in seeking to directly and/or indirectly receive remuneration illegally and in violation of the HITECH Act constitutes a violation of the Anti-Kickback Statute, and the defendants are subject to fines and damages for each instance in which they acted together to illegally overcharge patients.

244.    By illegally seeking remuneration in violation of the Anti-Kickback Statute, the defendants are subject to liability under the False Claims Act through a *qui tam* action.

**Count VI – Violation of the Related Indiana Statutes**

245.    The exact same conduct identified as violations of the Federal False Claims Act and the Anti-Kickback Statute in Counts I through IV above constitute violations of the laws of the State of Indiana in relation to the portion of funding which was provided through the state-operated Medicaid program for the EHR Program.

246.    Indiana has its own False Claims and Whistleblower Protection Act located at Ind. Code § 5-11-5.5-1, *et seq.*, along with another separate but similar statute to specifically address payments issued under the Medicaid program, located at Ind. Code § 5-11-5.7-1, *et seq.* These statutes contain *qui tam* provisions similar to the statutes located at Ind. Code § 5-11-5.5-4 and Ind. Code § 5-11-5.7-4, allowing for the Indiana attorney general or inspector general to intervene in relator claims to protect claims of the State of Indiana and its citizens for the misuse of public funds pursuant to Ind. Code § 5-11-5.5-5 and Ind. Code § 5-11-5.7-5.

247.    Additionally, the Indiana Medicaid false claims act follows the statute by incorporating anti-kickback provisions into its definition of false claims.

248.    The Medicaid portion of this statute specifically references claims, statements, records or omissions made or submitted in relation to or violations of the Indiana Medicaid program pursuant to Ind. Code § 12-15. This includes conduct which wrongfully deprives the State of Indiana of public funds pursuant to Ind. Code § 12-15-24-1, as well as soliciting, offering or receiving kickbacks, fees or rebates pursuant to Ind. Code § 12-15-24-2.

249.    For the same rationale and factual reasons by which the Original Hospital Defendants and CIOX are liable to the United States of America for false claims and anti-

kickback violations, the Original Hospital Defendants and CIOX are additionally liable to the State of Indiana for violations of these state statutes.

250.    Similar to their federal cousins, these state statutes allow the State of Indiana to pursue claims for nearly identical civil penalties, treble damages, and costs of civil litigation. (Ind. Code § 5-11-5.5-2 and Ind. Code § 5-11-5.7-2).

251.    Accordingly, for causing damage to the State of Indiana by the misuse of millions of dollars of grant funding, the Original Hospital Defendants and CIOX are liable to the State of Indiana according to the provisions of these state level statutes.

## VI.   CAUSES OF ACTION AGAINST THE STATISTICALLY CORRELATED DEFENDANTS

### Count VII – Violation of the False Claims Act

**Presenting Factually False Claims for Payment Pursuant to 31 U.S.C. § 3729(a)(1)(A)**

252.   The Statistically Correlated Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly submitting and/or conspiring to create and submit false statements and claims for the purposes of obtaining money through a  government program.

253.   Under the program at issue, for each year in which the Statistically Correlated Defendants sought payment of grant funding, they each filed a yearly Attestation to the government. Each Attestation constitutes a claim for payment pursuant to 31 U.S.C. § 3729(b)(2) as each Attestation was a request for payment under a government program.

254.   Each Attestation required Core Measure 11 reporting that accurately and honestly reported  requests for electronic records that were received from patients or their agents during the applicable program year, along with compliance  reporting within three (3) days to prove that the hospital used this certified electronic health record functionality for at least fifty percent of those requests.

255.   The Statistically Correlated Defendants all knowingly reported false information for this measure in order to ensure access to government grant funding.  Each Attestation constituted a factually false claim for payment, by presenting: 1) factually false information for Core Measure 11 compliance; and 2) falsely promising that each hospital had achieved and made Meaningful Use of their certified electronic medical record system.

256.   The statutes, regulations, and all interpretive materials created by the government in relation to this grant program make clear that compliance with all Core Measures and the achievement of Meaningful Use were mandatory in order to receive *any* funding under this

voluntary program. The factually false information presented in the Attestations to receive payment were material to the payment of grant funding. If the hospitals had reported accurate and true information, they would have been eligible to receive none of the funds they received.

257.    By knowingly presenting factually false claims for payment of grant funding under this program, the Statistically Correlated Defendants violated the False Claims Act.

258.    The United States of America was unaware of the factual falsity of these claims made by the Statistically Correlated Defendants.  In reliance upon the factual accuracy of the Attestation documents submitted by the Statistically Correlated Defendants and false proclamations of figures showing that the Statistically Correlated Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Statistically Correlated Defendants based on factually false claims.

259.    Without the false claims and false figures they provided to the government, the Statistically Correlated Defendants would not have been eligible to receive or retain grant funding under the voluntary terms of EHR Program. Congress only authorized the issuance of grant payments from the public fisc for hospitals that made Meaningful Use of certified electronic health records.

260.    That as a result of these actions, the Statistically Correlated Defendants have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Statistically Correlated Defendants.


**Count VIII – Violation of the False Claims Act**

**Making or Using a Factually False Record or Material Statement**

**for Payment Pursuant to 31 U.S.C. § 3729(a)(1)(B)**

261.    The Statistically Correlated Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly making or using a factually false record or statement material to a false or fraudulent claim.

262.    The Statistically Correlated Defendants had knowledge that in order to be eligible for funding under the EHR Program, they were required to track and report full compliance with various Core Measures in order to determined to have been a Meaningful User of certified electronic health records technology.

263.    The Statistically Correlated Defendants had knowledge that compliance with Core Measure 11 was mandatory in order to be eligible or receive any funding under the EHR Program.

264.    The Statistically Correlated Defendants had knowledge that in order to receive funding under the EHR Program, each year they were required to fill out an Attestation record that accurately recorded and reported Core Measure compliance numbers.

265.    The Statistically Correlated Defendants knowingly made or used factually false records or statements material to false or fraudulent claims pursuant to 31 U.S.C. § 3729(a)(1)(B) by creating and sending Attestation records which contained factually incorrect information in relation to their Core Measures 11 reporting numbers and their status as a Meaningful User of certified electronic health record technology.

266.    The statutes, regulations, and all interpretive materials created by the government in relation to this grant program make clear that compliance with all Core Measures and the achievement of Meaningful Use were mandatory in order to receive *any* funding under this voluntary program. The factually false Attestation records presented by the Original Hospital Defendants to receive payment were material to the payment of grant funding. If the hospitals had

created and used Attestation records that were factually accurate, they would have been eligible to receive none of the funds they received.

267.    By knowingly making or using factually false records for payment of grant funding under this program, the Statistically Correlated Defendants violated the False Claims Act.

268.    The United States of America was unaware of the factual falsity of the Attestation records made by the Statistically Correlated Defendants.  In reliance upon the factual accuracy of the Attestation documents submitted by the Statistically Correlated Defendants and false proclamations of figures showing that the Statistically Correlated Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Statistically Correlated Defendants based on factually false claims.

269.    Without the false Attestation records and statement they provided to the government, the Statistically Correlated Defendants would not have been eligible to receive or retain grant funding under the voluntary terms of EHR Program. Congress only authorized the issuance of grant payments from the public fisc for hospitals that made Meaningful Use of certified electronic health records, and proved such Meaningful Use through Attestation.

270.    That as a result of these actions, the Statistically Correlated Defendants have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Statistically Correlated Defendants .

**Count IX – Violation of the False Claims Act**

**Express False Certification for Payment**

**Pursuant to 31 U.S.C. § 3729(a)(1)(A) and 3729(a)(1)(B)**

271.    The Statistically Correlated Defendants have violated the False Claims Act (31 U.S.C. § 3729) by knowingly and expressly issuing false certification statements and documents to the United States of America certifying that they were in compliance with the basic eligibility rules mandated for hospitals to receive grant funding under the EHR Program.

272.    False Claims Act case law supports the use of express false-certification theories.

273.    In order to receive any of the funding under the EHR grant program, each year the Statistically Correlated Defendants were required to complete Attestation paperwork that contained multiple certifications by the hospitals of their compliance with the terms of the EHR Program. In doing so, the hospitals had to report compliance numbers for various mandatory Core Measures in order to certify that the hospital fit the definition of a Meaningful User of certified electronic health record technology.

274.    Further language and forms utilized in the Attestation paperwork certified that the information and figures reported by the Statistically Correlated Defendants was true and accurate under the pains and penalties of the False Claims Act.

275.    Without achieving, reporting, and certifying to the government numbers which confirmed that the Statistically Correlated Defendants were Meaningful Users who had correctly reported accurate statistics on the Core Measures, the Statistically Correlated Defendants were ineligible to receive any money under the EHR Program.

276.    That each of the Statistically Correlated Defendants knowingly and expressly reported false certification documents in order to receive grant funding under the EHR Program, by falsely tracking and certifying their compliance with Core Measure 11, when in fact those numbers were false.

277.    The United States of America was unaware of the factual falsity of the Attestation records made by the Statistically Correlated Defendants.  In reliance upon the factual accuracy of the Attestation documents submitted by the Statistically Correlated Defendants and false proclamations of figures showing that the Statistically Correlated Defendants were eligible for payments under the EHR Program, the United States of America paid grant funding to the Statistically Correlated Defendants  based on factually false claims.

278.    That an express false-certification of compliance with Core Measure 11 was a material misrepresentation under the False Claims Act, as the statutes, regulations, guides, and interpretive materials provided for the EHR Program all mandate compliance with all Core Measures in order to receive grant funding under the program. Congress only authorized grant funding under the EHR Program to hospitals that proved Meaningful Use of certified electronic health record systems. Failure to comply with Core Measure 11 means a failure to show Meaningful Use, meaning the hospitals would be ineligible to receive any funds under the EHR Program.

279.    By creating and using false-certification documents and statements to receive EHR grant funding when the Statistically Correlated Defendants were not actually Meaningful Users, the Statistically Correlated Defendants  have defrauded the United States of America of all funds they have received as a result of the false-certifications.

280.    That as a result of these actions, the Statistically Correlated Defendants have defrauded the United States of America and its tax-paying citizens, who have suffered damages totaling millions of dollars for grant funding that never should have been provided to, or retained by, the Statistically Correlated Defendants.

**Count X – Violation of the False Claims Act**

**Vicarious Liability for Employees and Agents**

281.    The Statistically Correlated Defendants all have vicarious liability for their employees, agents, business associates, and subcontractors, to the extent that those individuals or businesses caused the Statistically Correlated Defendants to issue false claims under Counts VII through XI of this action.

282.    To the extent that any other release of information providers caused or contributed to causing the Statistically Correlated Defendants to submit false claims and false information under the EHR Program, the Statistically Correlated Defendants remain vicariously liable for the actions of such parties.

283.    To the extent that any certified electronic health record technology firm provided the Statistically Correlated Defendants with technology that caused them to falsely track their compliance numbers in a fashion that caused the Statistically Correlated Defendants to create and issue false claims for payment, the Statistically Correlated Defendants remain vicariously liable for the actions of such parties.

284.    That the ultimate responsibility for truthfully tracking and reporting Core Measure 11 compliance information to the government under the EHR Program remained with the Statistically Correlated Defendants, who remain liable for the actions of any employees, agents, business associates, or subcontractors to the extent that they may have caused the Statistically Correlated Defendants to issue false claims for payment under the EHR Program.

**Count XI – Violation of the Anti-Kickback Statute**

285.     The Statistically Correlated Defendants, through presently unknown ROI providers or business associations they have utilized, are jointly and severally liable for the conduct of their business associates to the extent that kickbacks were sought or patients were illegally over-billed for access to their medical records.

286.     The Statistically Correlated Defendants did more than simply defraud the United States of America by taking grant funding that they were not eligible to receive or keep.  Not only did they fail to provide patients with the fast, cheap access to electronic records as required for receiving the grant funding at issue; they also allowed ROI providers or business associates to additionally profit by knowingly over-billing for the production of medical records by seeking hundreds of dollars rather than the reasonable remuneration allowed under the HITECH Act.

287.     As part of the business relationship between the Statistically Correlated Defendants and presently unknown ROI providers or business associates, these defendants knowingly engaged in a scheme to receive direct and/or indirect remuneration for the illegal sale of medical records to patients in violation of the HITECH Act.  In violation of the HITECH Act, the Statistically Correlated Defendants allowed their ROI providers or business associates to bill substantially larger amounts for the production of records that could have been placed upon a disc or flash drive as intended by the HITECH Act.

288.     As part of this business relationship, the Statistically Correlated Defendants illegally obtained grant funding from the EHR Program to cover the costs of providing medical records to patients, while knowingly seeking to receive remuneration from patients for profit at the expense of the citizens of the United States of America.

289.     The conduct of the defendants in seeking to directly and/or indirectly receive remuneration in violation of the HITECH Act constitutes a violation of the Anti-Kickback

Statute, and the Statistically Correlated Defendants are subject to fines and damages for each instance in which they allowed any overcharges to their patients.

290.     By illegally seeking remuneration in violation of the Anti-Kickback Statute, the Statistically Correlated Defendants are subject to liability under the False Claims Act through a *qui tam* action.

### Count XII – Violation of the Related Indiana Statutes

291.     The exact same conduct identified as violations of the Federal False Claims Act and the Anti-Kickback Statute in Counts VII and XI above constitute violations of the laws of the State of Indiana in relation to the portion of funding which was provided through the state-operated Medicaid program for the EHR Program.

292.     Indiana has its own False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-1 *et seq.*) along with another separate but similar statute to specifically address payments issued under the Medicaid program (Ind. Code § 5-11-5.7-1 *et seq.*).  These statutes contain *qui tam* provisions similar to the  statutes located at Ind. Code § 5-11-5.5-4 and Ind. Code § 5-11-5.7-4, allowing for the Indiana attorney general or inspector general to intervene in relator claims to protect claims of the State of Indiana and its citizens for the misuse of public funds pursuant to Ind. Code § 5-11-5.5-5 and Ind. Code § 5-11-5.7-5.

293.     Additionally, the Indiana Medicaid false claims act follows the statute by incorporating anti-kickback provisions into its definition of false claims.

294.     The Medicaid portion of this statute specifically references claims, statements, records, or omissions made or submitted in relation to or violations of the Indiana Medicaid program pursuant to Ind. Code § 12-15.  This includes conduct which wrongfully deprives the

State of Indiana of public funds pursuant to Ind. Code § 12-15-24-1, as well as soliciting, offering, or receiving kickbacks, fees, or rebates pursuant to Ind. Code § 12-15-24-2.

295.    For the same rationale and factual reasons by which the Statistically Correlated Defendants are liable to the United States of America for false claims and anti-kickback violations, the Statistically Correlated Defendants are additionally liable to the State of Indiana for violations of these state statutes.

296.    Similar to their federal cousins, these state statutes allow the State of Indiana to pursue claims for nearly identical civil penalties, treble damages, and costs of civil litigation. (Ind. Code § 5-11-5.5-2 and Ind. Code § 5-11-5.7-2).

297.    Accordingly, for causing damage to the State of Indiana by the misuse of millions of dollars of grant funding, the Statistically Correlated Defendants are liable to the State of Indiana according to the provisions of these state level statutes.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff/Relators, on behalf of the United States of America and the State of Indiana, respectfully requests this Court to find that the defendants have damaged the United States and the State of Indiana as a result of their conduct and violations of the False Claims Act, the Anti-Kickback Statute, and their derivative state statutory claims.  The Plaintiff/Relators pray that judgment be entered against the defendants for all applicable damages alleged in Counts I through VI, including but not limited to the following:

(i)    Enter judgment in favor the Plaintiff/Relators and against each separate defendant and order that each separate defendant is liable for and must pay compensatory damages to the Plaintiff/Relators equal to the total amount of grant funding each defendant received

under the EHR Program at both the federal and state level (the "Compensatory Damage Amounts");

(ii)  Order that the defendants are liable for and must pay treble damages on the Compensatory Damage Amounts the defendants are ordered to pay;

(iii)  Issue civil penalties against the defendants for each and every false claim the defendants submitted to the United States and the State of Indiana;

(iv)  Issue Civil Penalties against the defendants for each and every instance in which the defendants illegally sought kickback remuneration by over-billing for medical records in violation of the HITECH Act;

(v)  Grant the Relators an award for a fair and reasonable portion of damages awarded on this First Amended Complaint for their contribution to the government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and 3730(d) of the False Claims Act and the related state law provisions located at Ind. Code § 5-11-5.5-6 and Ind. Code § 5-11-5.7-6;

(vi)  Order that the defendants are liable for and must pay the reasonable attorneys' fees and expenses the Plaintiff/Relators incur in this litigation;

(vii)  Order that the defendants are liable for and must pay prejudgment and post-judgment interest;

(viii)  Order that the defendants are liable for and must pay for the costs of this action;

(ix)  Order all other just and proper relief in favor of the Plaintiff/Relators.

Wherefore, Relators/Plaintiffs request a trial by jury in relation to all claims at issue.


Respectfully submitted,


/s/ Michael P. Misch
_____
Michael P. Misch (27970-71)
Bradley P. Colborn (28501-20)
ANDERSON • AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, Indiana 46601
Telephone:  574.288.1510
Facsimile:  574.288.1650
Misch@aaklaw.com
Colborn@aaklaw.com
*Attorneys for Plaintiff/Relators*